## ROGERS *v.* CUNNINGHAM.

### Opinion delivered June 28, 1915.

1. DEEDS—VALIDITY—OLD AGE.—In the absence of fraud or undue influence, mere weakness of mind resulting from old age is not ground for setting aside a deed, provided the grantor was capable of understanding the nature and effect of the deed under consideration.

2. EVIDENCE—MENTAL CONDITION—OPINION OF NON-EXPERTS.—On the issue of incapacity or mental condition, the opinion of non-expert witnesses is admissible only, when taken in connection with the facts upon which such opinion is based; the specific facts upon which such opinions are based, must first be stated by other witnesses, or the testimony must show that such close and intimate relations have existed between the parties testifying and the person alleged to be mentally unsound, as to lead to a conclusion that their opinions will be justified by their opportunities for observing the person alleged to be mentally unsound.

3. EVIDENCE—MENTAL CAPACITY—NON-EXPERT TESTIMONY.—In weighing the evidence of witnesses as to alleged mental incapacity, bias and interest of witnesses and their means and opportunities of knowing the matters about which they testify must be considered, and the testimony of each witness must be read in the light of the other testimony.

4. DEEDS—VALIDITY—MENTAL INCAPACITY—BURDEN OF PROOF.—The burden is upon the plaintiff and father, who, having deeded lands to his children, seeks to set aside the deeds on the ground of mental incapacity at the time he executed the same.

5. DEEDS—DEED TO CHILDREN—MENTAL CAPACITY—VALIDITY.—Plaintiff, an old man, deeded certain lands to defendants, two of his chil-

dren. It appeared that defendants had lived with, and cared for, their father and mother for a great many years, and that they all had lived together harmoniously, and the son, one of the defendants, had worked the home place and provided for his parents. *Held,* in an action by the father to set aside the deeds, on account of his mental incapacity at the time, that the plaintiff failed to show that he was mentally incapable, and that under the evidence the deeds were valid.

Appeal from Baxter Chancery Court; *George T. Humphries,* Chancellor; reversed.

*Z. M. Horton,* for appellants.

1. The burden was on the plaintiff to show that at the time he made the deeds he did not possess sufficient intelligence to understand and appreciate the nature of his act, and to show any fraud or undue influence on the part of the defendants inducing the execution of the deeds. 27 Ark. 166; 70 Ark. 173, 174; 97 Ark. 450; 22 Cyc. 1109-1112. To show that a grantor in a deed was at the time of its execution old and infirm, and in his dotage, is not sufficient to overthrow the conveyance. 49 Ark. 367, and authorities cited. Underhill on Wills, 205, § 144, and authorities cited in note 1.

2. Opinions of non-expert witnesses are not admissible unless they first detail the facts upon which their opinions are founded. 61 Ark. 244.

*Gus Seawel,* for appellee.

1. The findings of a chancellor upon the facts in evidence will not be disturbed on appeal, unless they are clearly contrary to the preponderance of the testimony. 96 Ark. 171; 90 Ark. 40; *Id.* 156; 89 Ark. 132; 88 Ark. 615; 41 Ark. 292; 42 Ark. 521.

2. When, through age, decrepitude, affliction or disease, a man becomes imbecile and incapable of managing his affairs, an unreasonable or improvident disposition of his property will be set aside in chancery. 15 Ark. 555, 597; 105 Ark. 44, 47; 73 Ark. 170.

HART, J. On March 28, 1913, S. B. Cunningham, Sr., instituted this action in the chancery court against Nancy A. Rogers, his daughter, and E. B. Cunningham, his son,

to set aside two deeds to land executed by him in their favor. He alleged that the deeds were obtained without any consideration, and that because of his age and a severe illness, his mind and body became so impaired that he was, at the time the deeds were made, incapable of transacting any business. The defendants denied that the plaintiff's mental faculties were impaired to such an extent that he did not understand what he was doing at the time he executed the deeds. The chancellor, after hearing the evidence, found the issues in favor of the plaintiff, and a decree was entered cancelling and setting aside the deeds. The defendants have appealed.

(1) The law is well settled that, in the absence of fraud or undue influence, mere weakness of mind resulting from old age, is no ground for setting aside a deed, provided the grantor was capable of understanding the nature and effect of the deed under consideration. *McCulloch* v. *Campbell*, 49 Ark. 367; Pomeroy's Equity Jurisprudence (3 ed.), volume 2, section 947.

S. B. Cunningham, Sr., owned a tract of land in Baxter County on which he and his family resided. His children had all married and left home, except the youngest son, E. B. Cunningham. He returned from school at the age of twenty-three, and, on account of the advanced age of his father and mother, decided to remain on the farm and take care of them. At that time there were about fifteen acres of land under cultivation. Cunningham remained home with his parents until he was thirty-five years of age. During this time he had the actual management of the farm and increased the cultivated land so that now there are about fifty or sixty acres in cultivation. The place has a rental value of about $140 a year.

A few years after E. B. Cunningham took charge of the farm, Mrs. Nancy Rogers was separated from her husband and with her two little children, returned to the home of her parents. She continued to reside with them there until two or three years before this suit was brought. She then removed to the town of Norfolk, in Baxter County, and her parents went with her.

On January 8, 1912, the plaintiff executed to her a deed to 130 acres of the land above referred to, and on the same day executed to his son, E. B. Cunningham, a deed to thirty acres of said land. The plaintiff and his wife, after the execution of the deeds, continued to reside with Mrs. Rogers until the death of plaintiff's wife in September, 1912. A short time after this the plaintiff went to visit a daughter who resided in Missouri, and on October 17, 1913, instituted this action to set aside the deeds. The deeds are sought to be set aside solely on the ground of mental incapacity on the part of the plaintiff.

It is claimed that the plaintiff was in his dotage at the time he executed the deeds, and that both mind and body were impaired by old age, coupled with a severe illness, and to such an extent that he was unable to understand what he was doing when he executed the deeds. There is no imputation of mental unsoundness, except that which resulted from old age coupled with his illness.

The question then is, did the plaintiff, when he executed the deeds in question on January 8, 1912, understand the effect of his act?

(2) Before entering into a discussion of the evidence, it may be well to determine what effect is to be given to it. When a person's mental condition or incapacity is in question, the opinions of witnesses who are not experts as to such capacity is only admissible in evidence, when taken in connection with the facts upon which such opinions are based. Before such evidence is admissible, the specific facts upon which such opinions are based must first be stated by the witnesses, or the testimony must show that such close and intimate relations have existed between the parties testifying and the person alleged to be mentally unsound, as to lead to a conclusion that their opinions will be justified by their opportunities for observing the person alleged to be mentally unsound. *Williams* v. *Fulkes,* 103 Ark. 196; *Pulaski County* v. *Hill,* 97 Ark. 450.

(3) It may also be stated that in weighing the evidence of witnesses, bias and interest of witnesses, and

their means and opportunities of knowing the matters about which they testify, must all be considered, and the testimony of each witness must be read in the light of the other testimony.

On behalf of the plaintiff, C. H. Blevens testified that he was a neighbor of the plaintiff, and had known him about thirty years; that on the date on which the deed was executed, the plaintiff was mentally and physically very weak; that he knew as a fact that the plaintiff was not capable of transacting any business where good judgment and a money consideration were involved. The witness further stated that Mrs. Rogers had been separated from her husband about sixteen years, and returned to her father's home without any means of support, and that her father had supported her ever since.

Two other witnesses testified that about the time the plaintiff executed the deeds, he was weak mentally, and that he sometimes understood what he was doing, and sometimes did not understand what he was doing.

Another neighbor and his wife testified that they were frequently at the house of the plaintiff, and did not think he was mentally capable of executing the deeds when they were signed.

W. J. Cunningham, a son of the plaintiff, testified that he lived within two or three miles of the plaintiff and visited him as often as once a month; that during the fall of 1911 he had a severe spell of sickness and had never recovered from it; that he did not consider him capable of transacting any business of any kind at the time the deeds were executed.

J. H. Cunningham, another son, testified that his father was ill during the fall of 1911 and spring of 1912, and that from his observation of and conversations with his father he did not consider him capable of executing deeds or transacting any business of any kind during that time.

Another son who lived about twenty-four miles away also testified that his father was not mentally competent

to sign the deeds in question at the time they were signed, but does not say how often he visited his father.

Mary Hogue testified that she lived at Springfield, Missouri, and that her father was not mentally capable of executing the deeds in question at the time they were executed, but she does not say how often she visited her father or what opportunities she had to know his mental condition. She said that some time after his wife's death in 1912, the plaintiff came to visit her, and remained there until this suit was brought.

Another neighbor testified that he had known the plaintiff a great many years, and that he had been failing physically for quite a number of years, and said that on one or two occasions, he had noticed that his mind had become weak.

A physician who attended plaintiff's wife in her last illness, and who attended plaintiff in his illness during the fall of 1911, testified that at the time plaintiff's wife died, he was not in his right mind. He also stated that during the illness of the plaintiff in 1911, he was suffering from bilious fever and paralysis of the sensory nerve to such an extent that he was out of his head, and that the disease left him in a nervous and excited condition.

The plaintiff testified in his own behalf, and said that he did not know what he was doing at the time he executed the deeds; that the deeds were presented to him by an older son, D. Cunningham, and that something compelled him to sign them, and that he did not realize what he had done until some time afterward, and that he then at once tried to have them cancelled. He further stated that his daughter came home after her separation from her husband, and that he supported her until he went to reside with his daughter, who lived in Missouri. He also testified that he supported his son, the defendant, E. B. Cunningham.

On behalf of the defendants, G. E. Cunningham testified that, at the request of his father, he surveyed the lands in controversy, and that his father told him at the time that he wanted to make a deed to the lands to the de-

fendants; that he made no representations whatever to his father to induce him to make the deeds; that what he did was at the request and under the direction of his father; that after he surveyed the land, his father became ill, and the matter was dropped until his father got up; that his father again brought up the subject, and that he, pursuant to his father's directions, prepared the deeds and brought an officer over to take the acknowledgments of his father and mother to the deeds; that the defendant, E. B. Cunningham, was not present when the deeds were executed; and that though his father was weak in body, his mind was perfectly clear.

Another witness testified that four or five years before the deeds were executed, he spoke to the plaintiff about buying some timber on the land, and that the plaintiff refused to sell the timber to him, stating that he intended that the defendants should have the lands because they had stayed with them, and had taken care of them after the other children had gone.

A school teacher testified that he accompanied the defendant, E. B. Cunningham, home at the time he left school, and stayed all night with him; that the plaintiff and his wife told him that they wanted their youngest son and Mrs. Nancy Rogers to have the land. The mother, he said, insisted that the land upon which the house stood should go to the daughter, and that the son should have the uncleared land. This conversation occurred about seventeen years before the institution of this suit.

Another witness, a merchant in Norfolk, testified that Mrs. Nancy Rogers had an account with his store, and that she always paid her bills; that he frequently saw the plaintiff in his store, and that there was nothing in his actions to indicate that he was incapable of transacting his business; that he had known him a great many years, and that he was just as he had always been, except that he was more feeble as he grew older.

Another witness testified that about eight years before the bringing of this suit, he heard a conversation between the plaintiff and his wife and the defendants, in

which both the plaintiff and his wife stated that they wanted the defendants to have the place. This witness was at that time boarding at their house.

Mrs. Rogers testified that after her separation from her husband, she returned to her father's house and lived there until they removed to town about three years before the institution of this suit; that her father and mother were feeble in body, and not able to work much, but that their minds were clear and that they fully understood what they were doing when the deeds in question were executed; that she and her children worked around the place and helped to care for her father and mother; that when they removed to town, her parents went with her and lived in the house which their son, G. E. Cunningham, had helped to build for her; that she did nothing whatever to induce her father and mother to execute the deeds in question, but that they executed them of their own free will and volition; that her father and mother continued to live with her after the deeds were executed until the death of her mother in September, 1912; that a short time after this her father left to visit her sister in Missouri, but that it was understood at the time that he would return and make his home with her; and that he remained with her sister in Missouri, and never did return to her.

E. B. Cunningham testified that it was his intention to become a school teacher, but that when he returned home in his twenty-third year and saw that his father and mother were growing feeble, and all their other children having left them, he thought it best to stay there with them; that he had charge of the farm and managed it until he was thirty-five years old; that when he returned from school there were fifteen acres in cultivation, and that he afterward increased the cleared land until there were between fifty and sixty acres; that during all this time he paid the taxes on the farm either from the proceeds of the farm, or from money which he himself made; that he would sometimes go off and work for wages elsewhere, but that whether he was on the farm or off at work, he devoted the proceeds of his labor to the support of his par-

ents; that the rental value of the farm was not sufficient to support them; and that afterward he homesteaded another piece of land, and when he married, went to reside on it.

We have only attempted to set out the substance of the evidence. It would be impracticable to set it out in detail, and would be of no value to specifically review it.

It is the contention of counsel for the plaintiff that at the time the deeds were executed, the plaintiff was in his dotage with body and mind enfeebled by a long and severe sickness, and that on this account, he was incapable of understanding what he was doing. They say that it is unreasonable to believe that the plaintiff would divest himself of all his possessions at a time when he was old and feeble. They claim that the case falls within the rule announced in *Morton* v. *Davis,* 105 Ark. 44, where it was held that when a person from age, affliction or disease, becomes incapable of managing his affairs, an improvident conveyance of his property will be set aside in equity.

We do not think the facts bring the case within the rule there announced. The deeds in question were reasonable to the grantees and just to the grantors. It is true that the deeds do not recite that they are given in consideration that the grantees should support the grantors during their natural life; but it appears from the record that the plaintiff had resided with the defendants for about sixteen years before the plaintiff's wife died, and there is nothing in the record which indicated that any friction whatever existed between the parties. The defendant, E. B. Cunningham, had stayed with his parents from the age of twenty-three to thirty-five. And Mrs. Rogers, after her separation from her husband, came home, and they all lived together in harmony, so far as the record discloses. When the son married and went to live on a piece of land he had acquired near by, he still looked after his parents, who remained on their homestead with Mrs. Rogers. When Mrs. Rogers moved to town, her parents went with her, and, as before stated, re-

sided there until the mother died, which was several months after the execution of the deeds.

Under these circumstances, it is natural to presume that they intended that their father should continue to reside with her until his death, and Mrs. Rogers testified that this was her understanding.

(4) It will be noted that only three of the disinterested witnesses for the plaintiff testified that the plaintiff was mentally incompetent at all times during the fall of 1911 and spring of 1912. The other two disinterested witnesses testified that at times he was capable of transacting business, and that at other times he was not. It devolved upon the plaintiff to show that he was incapable at the particular time when the deeds were executed. His own testimony, taken more than a year later, shows that at the time it was given, he was quite capable of understanding everything he did. His own testimony refutes the idea that he was incapable at all times.

In reference to the testimony of his children, it may be said that Mrs. Hogue lived in another State, and the record does not show what opportunities, if any, she had to know her father's mental condition at the time the deed was executed.

Another of his children who testified that he was mentally incompetent, admitted that although he lived within three miles of his father's home, he did not visit him more than once a month.

Another son testified that he lived more than twenty miles away, and, although he stated that his father was mentally incompetent, he does not state how often he visited him.

Another son testified that he lived nearby, visited his father frequently, and that he was incompetent at the time he executed the deeds.

Several witnesses for the defendants testified that at intervals during the past seventeen years, the plaintiff had declared his intention of executing a deed to the lands in favor of the defendants.

G. E. Cunningham, a son of the plaintiff, testified that he surveyed the land at the request of his father, who declared to him his intention of executing deeds to the lands to the defendants, and that the deeds were prepared by him and presented to his father for execution pursuant to his direction. This son had no interest in the matter except to carry out his father's wishes. He gave his sister several lots when she removed to town and assisted her to build a house on them. He understood and expected his parents to live with her.

The officer who took the acknowledgment of the plaintiff to the deeds, testified that he knew him well, and had known him many years, and that though the plaintiff appeared feeble in body, his mind seemed to be clear, and that he fully understood what he was doing.

Mrs. Rogers also testified that he understood what he was doing on the day he executed the deeds.

So, it will be seen that all the witnesses who were present when the deeds were executed, testified that the plaintiff fully understood what he was doing when he executed them, and that he executed them of his own volition.

A consideration of the plaintiff's own testimony shows that his mind had not become so impaired by old age that he did not understand what he was doing; and when it is considered that the plaintiff had lived with both of the defendants most of the time during the past sixteen years, and with one of them all of the time, and that their relations had always been harmonious, we think these facts, taken in connection with other facts and circumstances, show that the plaintiff was capable of understanding what he was doing at the time he executed the deeds in question.

It is true plaintiff testified that he had supported Mrs. Rogers out of the proceeds of his farm, and had also aided his son, Ed; but it will be remembered that the rental value of the farm is now only $140 per annum with fifty acres in cultivation. When Ed took charge, there were only fifteen acres in cultivation. It is evident therefore that the labor and management of the children was

necessary to supplement the income from the farm. It was natural for the parents to make a deed of their small holdings to their children, who had remained with them and provided for them in their old age; and that the greater part of this should be given to the daughter whose husband had left her. The father, in executing the deeds, only carried out his intentions as expressed at intervals during the whole time he lived with the defendants.

(5) A careful reading of the whole record in the case leads us to the conclusion that the clear preponderance of the testimony shows that the plaintiff was mentally competent when he executed the deeds, and we are of the opinion that the chancellor erred in holding to the contrary.

Upon the views we have expressed it follows that the decree will be reversed and the cause remanded with directions to the chancellor to dismiss the complaint for want of equity.