GIBSON *v.* GIBSON.

## Opinion delivered January 22, 1923.

1. DEEDS—MENTAL CAPACITY.—In the absence of fraud or undue influence, mere weakness of mind resulting from old age is no ground for setting aside a deed, provided the grantor was able to understand the nature and effect of the particular act in which he participated.

2. DEEDS—MENTAL CAPACITY—BURDEN OF PROOF.—On appeal by plaintiffs in a suit to set aside a deed on the ground of want of mental capacity in the grantor resulting from old age, the burden was on the plaintiffs in the Supreme Court as well as in the trial court to establish the grantor's mental incapacity by a preponderance of the evidence.

3. DEEDS—MENTAL CAPACITY—WEIGHT OF EVIDENCE.—In a suit to set aside a deed by a husband to his wife on the ground of his mental incapacity, evidence *held* insufficient to support a finding that the grantor did not have mental capacity to execute the deed.

Appeal from Conway Chancery Court; *W. E. Atkinson,* Chancellor; reversed.

STATEMENT OF FACTS.

Appellant prosecutes this appeal to reverse a decree against her setting aside a deed made to her to certain lands by her husband on the 24th day of November, 1920. Her husband, Hugh H. Gibson, died on January 1, 1921, and this suit was brought by appellees, who are his heirs-at-law and children by a former wife, against appellant to set aside said deed.

It appears from the record that Hugh H. Gibson was a native of Ireland, but had resided in Conway County, Ark., for a great many years prior to his death.

He was seventy-three years of age at the time of his death, and left surviving him his widow, Mrs. M. A. Gibson, whom he had married on the 25th day of November, 1915, and three children by his first wife, Wilson Gibson, Mrs. Connie O'Shea, and H. H. Gibson, Jr., as his sole heirs-at-law. Wilson Gibson was forty-six years old, Mrs. Connie O'Shea fifty, and H. H. Gibson, Jr., forty years old at the time their father died.

The property in controversy is estimated to be of the value of $2,500. Hugh H. Gibson was confined to the asylum for the insane in 1894, and his first wife made the affidavit alleging his insanity. He was subsequently discharged from the asylum as cured. His children brought him to the Battle Creek Sanitarium at Little Rock in 1904, and, according to their testimony, his mental condition was bad in 1904 and 1905.

H. H. Gibson brought a suit for divorce against his first wife, and she filed an answer and cross-complaint asking for a divorce from him. She was granted a divorce on her answer and cross-complaint in 1905, and dower was assigned her in the real and personal estate of said H. H. Gibson.

The divorce suit caused an estrangement between H. H. Gibson and his children. He became very much embittered against two of them, and frequently declared that they should never have any of his property. He married the appellant on the 25th day of November, 1915, and lived with her until his death.

According to her testimony, at the time they married H. H. Gibson agreed to leave her all of his property, and she agreed to marry him and take care of him the rest of his life. She had a farm and sufficient property to support herself at the time. She was forty-eight years old when her husband died.

In 1916, H. H. Gibson went to Russellville, Ark., and procured Judge R. B. Wilson to write his will. He gave his children $25 each and devised the rest of his property to the appellant, whom he designated as his beloved wife. On the 24th day of November, 1920, he executed

the deed in question to appellant.    The deed recites the following:

"That I, H. H. Gibson, for and in consideration of the sum of one dollar to me paid by Mrs. M. A. Gibson, and the further consideration of her agreement to live with and care for me during my natural life, and my love and affection for my wife, do hereby grant, bargain, sell, and convey unto the said Mrs. M. A. Gibson and unto heirs and assigns forever, the following land, situated in the county of Conway and State of Arkansas, to wit: (Here follows the description of the land).

"It is agreed and understood that H. H. Gibson shall have the land for and during his natural life."

In 1914 H. H. Gibson was confined in the State insane asylum.    This time the affidavit was made by Wilson Gibson, who says he made it upon the direction of the authorities in the city of St. Louis, where his father had temporarily gone.    His parole was procured by a niece, and he was in a few months discharged from the asylum.

The record shows that H. H. Gibson was admitted to the asylum on October 22, 1914, and a diagnosis shows him to have been afflicted with mental depression with senility.

According to the testimony of Dr. C. Arkebauer, this is an affliction of old age, and does not, in the early stages, render the patient incompetent to make and understand any ordinary contract.    Such mental incompetency would depend upon the progress of the disease.    Dr. Arkebauer has specialized in the treatment of mental and nervous diseases for the past twenty-one years.

In May, 1915, after the examination of witnesses, the court made an order releasing H. H. Gibson from the asylum on the ground that he had so far recovered from his late illness as to be capable of attending to his own business.    The depositions of seventeen witnesses on each side were read before the chancellor at the hearing of the case.

The chancellor made a finding to the effect that H. H. Gibson was mentally incompetent to execute the will prepared by Judge Wilson in March, 1916, and the deed written by Edward Gordon in November, 1920.

A decree was accordingly entered in favor of appellees, the plaintiffs in the court below, setting aside said deed and will and quieting the title to the lands embraced therein in appellees, subject to the widow's dower. As above stated, the case is here on appeal.

*Edward Gordon,* for appellant.

1. Hugh H. Gibson was not insane. Proof that a testator was incoherent in speech will not affect his testamentary capacity as against evidence of ability to transact business, where the will was reasonable. 16 N. Y. S. R. 983, 2 N. Y. Supp. 24. For definitions of delusions see New Standard Dict., p. 676; Wharton & Stille, Med. Jur., vol. 1, p. 80. A delusion will not affect the validity of an instrument where it is in no way connected with the subjects or objects of the testamentary act. Wharton & Stille, Med. Jur., vol. 1, p. 84, § 83; *Id.,* p. 85, § 85; *Id.,* 117, § 13; *Schweitzer* v. *Bean,* 154 Ark. 228.

2. The deed, as a matter of law, cannot be canceled under the facts and circumstances of this case. Non-expert witnesses must detail the facts upon which they base their opinions as to a grantor's mental capacity, before such testimony is admissible. 119 Ark. 469; 103 Ark. 196; 97 Ark. 450, 457; Wharton & Stille, Med. Jur., vol. 1, p. 444, § 364; 22 C. J. 602. See also 29 Ark. 151; Wharton & Stille, Med. Jur., vol. 1, p. 68, § 64; *Id.,* p. 104. Not only is there the presumption of sanity in Gibson's favor, but there is satisfactory and convincing proof of his mental capacity to transact business and make contracts, both in the testimony of witnesses who knew him long, associated with and had business dealings with him, and in the contents of the deed itself dictated by him. 73 Ark. 172; 15 Ark. 555. The judgment of the probate court declaring him insane was without

notice and void. 32 Ark. 674. The agreement between Mr. and Mrs. Gibson before marriage was reasonable, and the consideration valuable and sufficient. 117 Ark. 231, 232; 128 Ark. 146, 148; 78 Ark. 422, 424; 70 Ark. 166. If Gibson had failed to execute the deed, equity would have decreed specific performance of the contract, Mrs. Gibson having fully carried out its terms. 128 Ark. 1; 102 Ark. 30; 105 Ark. 494; 117 Ark. 228. See also 146 Ark. 266; 1 Wharton & Stille, Med. Jur., 5th edition, p. 8, § 5; C. B. 23; 10 Allen, 59; 48 N. H. 133; 2 Am. Rep. 202; 10 Pa. 56; 49 Am. Dec. 573; 92 Pa. 428; 185 Ill. 618, 76 Am. St. Rep. 59, 57 N. E. 770; 145 Ind. 673, 44 N. E. 543; 107 Ia. 52, 77 N. W. 511; 34 Kan. 8, 55 Am. Rep. 233, 8 Pac. 584; 88 Md. 368, 42 L. R. A. 745, 71 Am. St. Rep. 418, 41 Atl. 908; 151 Mo. 431, 52 S. W. 214; 25 Nev. 261, 59 Pac. 863, 62 Pac. 705; 38 N. J. L. 536; 79 N. Y. 541; 76 App. Div. 393, 78 N. Y. Supp. 109; 80 N. C. 236, 30 Am. Rep. 77; 37 S. W. 784; 28 Wis. 272; 139 U. S. 176, 35 L. Ed. 123.

*Strait & Strait,* for appellees.

1. We think the proof of Gibson's insanity is overwhelming, and the chancellor's finding to that effect is at least persuasive, and will not be overturned unless it is clearly against the preponderance of the evidence. Where the testimony is sharply conflicting, the chancellor's finding will not be disturbed. 148 Ark. 295; 146 Ark. 99; 145 Ark. 247; 144 Ark. 50; *Id.,* 573; 143 Ark. 319. All the physicians who testified are agreed on the proposition that his insanity was progressive, incurable and of a nature that incapacitated him from transacting business. Peterson & Haynes, Mental Diseases, vol. 1, p. 616; Church & Peterson, Nervous and Mental Diseases. 685. The testimony of appellee's other witnesses shows that he was generally insane, incapable of transacting business and making contracts. When, by reason of age, decrepitude or mental disease, one becomes an imbecile or unable to manage his affairs, an improvident disposition of his property will be set aside. 84

Ark. 490; 27 Ark. 166; 29 Ark. 151; 73 Ark. 170; 97 Ark. 450; 145 Ark. 247; 115 Ark. 430.

2. If there was ever an antenuptial contract between appellant and Gibson, it was verbal merely, and therefore void. C. & M. Dig., § 7028; 30 Ark. 417; 44 Ark. 112; 67 Ark. 79.

HART, J. (after stating the facts). The law is well settled in this State that, in the absence of fraud or undue influence, mere weakness of mind resulting from old age is no ground for setting aside a deed, provided the grantor was able to understand the nature and effect of the particular act in which he participated. *McCulloch* v. *Campbell*, 49 Ark. 367; *Taylor* v. *McClintock*, 87 Ark. 243, and *Rogers* v. *Cunningham*, 119 Ark. 466.

There is no evidence of fraud or undue influence in the record. The deed is sought to be set aside solely on the ground of the mental incapacity of the grantor. Chancery cases are tried *de novo* on appeal, and the burden rested upon appellees in the court below (and rests upon them here) to establish the mental incapacity of Gibson to make the deed in question, by a preponderance of the evidence. This they have failed to do. The depositions of seventeen witnesses on each side were read before the chancellor and are contained in the record.

Intelligent and reputable citizens and neighbors of H. H. Gibson, who had known him well for many years, testified on both sides of the case. Each side also had two or three skilled physicians who had known Gibson for a long time. The physicians who testified at the instance of appellees were of the opinion that Gibson had suffered for many years with paranoia and was under the delusion that he was being persecuted by his children. They considered him mentally incompetent to make the deed in question. The other witnesses for appellees also testified that they had known Gibson for many years, and did not consider that he was mentally capable of making the deed in question.

On the other hand, witnesses who had equal opportunities of knowing the mental condition of II. H. Gibson for many years prior to his death testified that he was mentally competent to execute the deed. They said that, while he had some peculiarities and possessed a quick temper, he fully understood what he was doing, and was capable of attending to his own affairs. They said that he had become estranged from his children on account of their taking their mother's part at the time she was divorced from him. This estrangement finally led to extreme bitterness between Gibson and two of his children..

A physician who attended Gibson during the last year of his life several times, and who had known him well for many years, testified that he was mentally competent to make the deed.

It is fairly inferable from the testimony of Dr. Arkebauer, taken in connection with the short time that Gibson remained in the asylum during the latter part of 1914 and the first part of 1915, that Gibson had fully recovered from any mental incompetency from which he suffered when he was confined in the asylum.

A judgment of the court was rendered in May, 1915, releasing him from the asylum, and it recites that Gibson had fully recovered from his illness.

It will be remembered that Gibson was out on parole at the time the judgment was rendered, and that the court not only based its finding upon the testimony of witnesses, but on the fact that Gibson was at home on parole.

Appellant testified that, at the time she married Gibson, in November, 1915, he agreed to convey all of his property to her, and she agreed to marry him and take care of him during the rest of his life. In March the next year Gibson made a trip to Russellville, and directed Judge R. B. Wilson to prepare his will. His wife was not with him, and no one else was there to advise Judge Wilson of the disposition he wanted to make of his property. Gibson directed Judge Wilson

to prepare his will bequeathing $25 each to his three children, who were named in the will, and the rest of his property was devised and bequeathed to appellant, who was called his beloved wife. So far as the record discloses, this was done without the prompting of any one. This shows that Gibson recognized the agreement he had made with his wife at the time of their marriage to leave her all of his property, or at least tends to show that at that time he intended that she should have all of his property at his death, except a small sum bequeathed to each of his children. The fact that he specifically mentioned his children in the will tended to show that he recollected them and intended that they should not have any of his property.

His first wife had already been given one-third of all his property at the time she obtained a divorce from him. When Gibson directed the deed in question to be prepared in November, 1920, he stated to the attorney who prepared the deed that he did not intend for his children to have any of his property, and that he wanted his wife to have all of it. He stated further that he felt under obligations to his wife and wanted her to have all of his property, in recognition of their marriage agreement. He told his attorney that he had agreed to convey all of his property to her if she would marry him and take care of him.

The deed recites the consideration that appellant had agreed to live with and care for her husband during his natural life. This agreement had been made at the time of their marriage in November, 1915, and the appellant had carried out this agreement on her part for five years before the deed in question was executed. It will also be noted that the deed contains this clause: "It is agreed and understood that H. H. Gibson shall have the land for and during his natural life." The insertion of this clause in the deed by Gibson tends to show that he understood what he was doing, and that, while he was executing the deed to carry out the agreement he made with his wife at the time of their mar-

riage, still he desired to retain control.of his land until he died. This was an act of prudence on his part negativing the idea that he did not understand what he was doing when he executed the deed. His wife was not present, and it is not shown that the deed was made at her suggestion.

It is true that Gibson did not live long afterwards, but it must be remembered that he had agreed to make the deed to his wife at the time of their marriage, five years before, in consideration that she would take care of him, and this agreement she had faithfully carried out, so far as the record discloses.

No good purpose could be accomplished by setting out in detail the testimony of the various witnesses in the case and discussing and analyzing their testimony at length. We deem it sufficient to say that we have carefully read and considered the evidence in the record, and are of the opinion that the finding of the chancellor that Gibson was mentally incompetent at the time he executed the will and deed in question is against the preponderance of the evidence.

As above stated, the burden of proof was upon appellees to show this fact, and, having failed to do so, the learned chancellor erred in setting aside and annulling the will and deed.

It follows that the decree must be reversed, and the cause will be remanded, with directions to dismiss the complaint for want of equity.