MARTHA SHEFFIELD WHATLEY AND BETTY SUE SHEFFIELD WRIGHT v. LOUISE CORBIN

5-5877                                    480 S.W. 2d 142

Opinion delivered May 15, 1972

562

*Young & Patton,* by: *Nicholas H. Patton,* for appellants.

*McKay, Chandler & Choate,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellants ask us to reverse the decree of the chancery court confirming the validity of a deed from J. Glen Sheffield (now deceased) to his sister Louise Corbin and his wife Imogene Sheffield. Appellants are the surviving daughters and sole heirs at law of Sheffield. They contended in the chancery court that the deed was not supported by valuable consideration and that the grantor was not competent to execute the deed. They contend here that the chancellor's findings are not supported by the evidence. Appellants do not argue, however, their point as to consideration. It is sufficient to say that, in the absence of fraud or undue influence, a voluntary conveyance which consititutes a present grant is not invalid as between the parties and their privies. *McCuiston* v. *Rollman,* 243 Ark. 668, 420 S.W. 2d 925; *Cannon* v. *Owens,* 224 Ark. 614, 275 S.W. 2d 445; *Ferguson* v. *Haynes,* 224 Ark. 342, 273 S.W. 2d 23; *O'Connor* v. *Patton,* 171 Ark. 626, 286 S.W. 822.

Appellants had the burden of showing by clear, cogent and convincing evidence that the grantor in the deed did not have sufficient mental capacity at the time the deed was executed to enable him to exercise reasonable judgment concerning the matter of the execution of the deed in protecting his own interests. *Braswell* v. *Brandon,* 208 Ark. 174, 185 S.W. 2d 271; *Richard* v. *Smith,* 235 Ark. 752, 361 S.W. 2d 741.

We have consistently followed this oft-reiterated rule

stated in *Pledger* v. *Birkhead,* 156 Ark. 443, 246 S.W. 510:

> If the maker of a deed, will, or other instrument has *sufficient mental capacity to retain in his mem-ory without prompting the extent and condition of his property and to comprehend how he is disposing of it and to whom and upon what consideration,* then he possesses sufficient mental capacity to execute such instrument. Sufficient mental ability to exercise a reasonable judgment concerning these matters in protecting *his own interest in dealing with ano-ther* is all the law requires. If a person has such men-tal capacity, then, in the absence of fraud, duress, or undue influence, mental weakness, whether pro-duced by old age or through physical infirmities, will not invalidate an instrument executed by him.

We have carefully reviewed the evidence as abstracted and are unable to say that the chancellor incorrectly held that appellants failed to meet their heavy burden. No use-ful purpose would be served by a detailed review of the evidence. Appellants relied almost entirely upon the testi-mony of J. B. Rochelle, III, M. D., who testified regarding medication given Sheffield during his last illness from notes made by nurses at the hospital and who had almost no recollection of the patient's condition or of any visits to or conversations with him. The treatment began on November 4, 1968, nearly four months before the exe-cution of the deed. This physician entered Sheffield in a hospital on January 3, 1969, for a stay ending January 17, 1969, following diagnosis of a lung cancer which had spread to his esophagus and liver. Sheffield was again ad-mitted to the hospital on February 7, 1969, and remained there until he died on March 2, 1969. Medicines prescribed for him would have had a sedative effect on the usual person and some of them would blunt the memory for near-term effects. The dosage indicated on the date the deed was signed could have affected Sheffield's judgment and would have caused the doctor to question his ability to reason, and, in the doctor's opinion, in all reasonable medical probability, Sheffield's judgment would have been impaired. While notes indicated that Sheffield was

in a semistuporous state on February 20, 1969, there were no notes indicating the existence of such a condition on February 25, 1969. The doctor did not advise Sheffield of his condition prior to his entering the hospital and did not think that he did thereafter. He did not know what effect the medication had on Sheffield. When he saw Sheffield on three occasions between hospital stays, he found Sheffield capable of understanding what this doctor talked to him about. While he talked to Sheffield during daily visits to him in the hospital, he could not recall what he talked to Sheffield about, or whether Sheffield talked or not. He found that sedation administered did not affect Sheffield as it would a normal person. He could not say that the medication did blunt Sheffield's near-term memory. The doctor visited Sheffield on the day the deed was executed, but did not recall any conversation, and could not testify as to his mental condition on that day. Dr. Rochelle could not say that the medication he prescribed was actually administered, except that he would have noticed if less narcotics than he prescribed had been given.

Appellee, the sister of Sheffield, who was a grantee in the deed, testified that he was very alert on the occasions when she visited him.

A secretary for Sheffield's lawyer related that Sheffield specifically asked the lawyer to omit the property which was the subject of the deed in question from a will prepared for Sheffield and signed by him on January 29, 1969, because he intended to make other disposition of it. The deed was later prepared in this lawyer's office and taken to the hospital by this secretary, who testified that it was signed in her presence. She took his acknowledgment and said she would not have done so it she had thought he did not know what he was doing. She had known him for 10 years.

Sheffield's mother stated that one of his daughters, an appellant here, did not invite him to the daughter's wedding, did not mention his name in connection with it and did not come to his funeral. She said that Sheffield, between hospital stays, had told her that he was going

to will his town property to his wife and deed the other property to his wife and his sister Louise Corbin. She said that he had deliberately refrained from taking sedation on this occasion so that his mind would be clear, and had "walked the floor all night" until advising her of his decision about 2:00 a.m.

Richard C. Allen, pastor of St. James Episcopal Church in Texarkana, testified that he had baptized Glen Sheffield two days after the execution of the deed. He had visited Sheffield in the hospital almost daily. On these visits he found Sheffield responsive to him and the subjects of his conversation. He testified that even when heavily sedated Sheffield responded upon being "roused." He said that he would not have proceeded with the baptism if he had not thought Sheffield knew what he was doing.

Since we cannot say that the evidence of lack of mental capacity is clear, cogent and convincing, the decree is affirmed.