Lavedna GARIS *v.* James T. MASSEY, his wife
Earline MASSEY; Jim KENT, and Jim POOLE,
Administrator of the Estate of Lura KENT,
deceased; Jim BRINKLEY, and his wife,
Effie BRINKLEY

CA 80-201                               606 S.W. 2d 109
Court of Appeals of Arkansas
Opinion delivered October 8, 1980

*Kirby Riffel* and *David Throesch*, for appellant.

*Barrett, Wheatley, Smith & Deacon*, and *Burris & Berry*, for appellees.

MARIAN F. PENIX, Judge. Lavedna Garis, daughter and sole heir of Lura Kent, sued to set aside a deed from Lura Kent to James Massey. Lura Kent is now deceased. Ms. Garis' complaint alleged Lura Kent was legally incompetent when she signed the deed, that her husband Jim Kent exer-

cised undue influence and used fraud and duress to induce her to sign the deed, and that the consideration was inadequate. The Chancellor dismissed the complaint and the counterclaim of defendants Massey. Ms Garis appeals.

Ms. Garis amended her complaint to allege Jim Kent had quitclaimed any interest he might have had to Jim and Effie Brinkley, who were added as party defendants. The Brinkleys, by way of affirmative defense, state that Jim Kent would have curtesy right in Lura Kent's estate, and therefore they would obtain any interest in the property in question that Jim Kent would receive if Ms. Garis prevails.

The Court's findings state there is a presumption in favor of competence and the proof was insufficient to overcome the presumption Lura Kent was competent at the time the deed was executed. The Court further found the standard of proof of fraud or undue influence requires not just a preponderance of evidence, but clear, cogent and convincing evidence of the existence of fraud or undue influence.

Ms. Garis contends Lura Kent was shown to be imcompetent by a preponderance of the evidence. In reviewing the record we find voluminous testimony from acquaintances, neighbors, relatives as to Lura Kent's eccentricities, imagination, forgetfulness, and approaching senility. But the essential elements found in incompetency were never proven nor shown. Those being: (a Lura Kent's inability to appreciate the extent and condition of her property (b her failure to appreciate her disposition of the property and (c her failure to understand the consideration and the (d proof these elements existed *at the time* she executed the deed.

Several witnesses gave an account of the incident when Lura Kent was found in a disheveled condition in a ditch near her home. This was three days following the execution of the deed. There was no testimony proving she was incapable of understanding a business transaction prior to her signing of the deed. Although we have no actual proof of what occurred just before Lura Kent's being found in the ditch, we can conjecture she must have experienced something traumatic. Several of the witnesses conjectured there must have been

"something wrong" with Lura Kent because she was fre-
quently seen standing on her property looking at things. The
witnesses who testified as to strange incidents also admitted
on cross-examination Lura Kent was competent at times.
From the testimony there emerges a woman 20 years her
husband's senior, very much in love with her husband, who
did bizarre things when her husband was away from home
long hours and without explanation. Sterling Bland testified
to two incidents of bizarre behavior — one being when Lura
Kent was found in the ditch and the other when she awaken-
ed the Blands at 3:00 a.m. frantically looking for Jim Kent,
her husband. None of Bland's testimony related in any way
to Lura Kent's competency in business matters.

Most of the testimony by relatives concerned Lura
Kent's mental condition after she was brought to Missouri,
apart from her husband and friends, placed in a nursing
home and was given drugs for her arteriosclerosis and Parkin-
son's disease. Lura Kent's former lawyer finally admitted on
cross-examination Lura Kent probably would have been
capable of making a contract in February 1976 and he did not
testify to anything which would alter this observation prior to
July 1976 — the date of the execution of the deed.

Dr. Creech did not see Lura Kent until October 1976.
Dr. Creech thought she might have had a stroke earlier. Dr.
Clopton testified no doctor seeing her in October 1976 could
have any way of knowing in terms of any reasonable degree of
medical certainty her condition in July 1976 — especially in
view of the drugs and treatment she received since July. We
can find from the record, no medical evidence going to Lura
Kent's incompetency *at the time* she conveyed her property to
Massey in July 1976.

*Harwell* v. *Garrett*, 239 Ark. 551, 393 S.W. 2d 256 (1965)
involved the execution of a will. Chief Justice Harris quotes
from Volume 1, Page on Wills, Section 12.37:

> The fact that the testator was filthy, forgetful, and
> eccentric, or that he believed in witchcraft, and had dogs
> and cats at the same table with him, and would lie in
> bed with his clothes on for two weeks at a time, or that

he would leave his home only at night, and would count or recount his money, or that he was high tempered and violent, or was irritable and profane, or that the testator thought that others were plotting against him and was afraid to go out in the dark, or that he was inattentive when spoken to and mumbled when trying to talk, does not establish lack of capacity.

We find no error in the Chancellor's finding Ms. Garis failed to overcome the presumption that Lura Kent intelligently comprehended the transaction which requires the execution of her deed. See *Hunt* v. *Jones*, 228 Ark. 545, 309 S.W. 2d 22, (1958) and *Pledger* v. *Berkhead*, 156 Ark. 443, 246 S.W. 2d 510 (1923).

Having found the presumption of competency has not been overcome, we need not address Ms. Garis' allegation in regard to changing the burden of proof to the defendants to show lucid intervals.

The question of whether the Attorney Holloway's impeaching testimony should have been allowed is a difficult one. After the Chancellor sustained the objection to Mr. Holloway's testimony, his testimony was proffered showing he was familiar with the reputation of the defendants' witnesses Bill Davis' and Richard Easely's truthfulness in the Corning community in which they lived and it is not good. The proffer was that Attorney Holloway had an opinion personally as to their truthfulness and he would not rely on their testimony. The proffer also was that each witness is an ex-convict.

Both of these witnesses were important to the defendants' case. Their credibility was important as they claimed first-hand knowledge of Lura Kent's competency. Under the Uniform Rules of Evidence, Rules 608 and 609 we find Attorney Holloway's testimony should have been admitted.

Rule 609(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be *admitted but* only if the crime (1) was punishable by death or imprisonment in excess

of one [1] year under the law under which he was convicted, and the court determines that the appropriate value of admitting this evidence outweighs its prejudicial effect to a party or a witness.

In the Federal Rule the words "If elicited from him or established by public record during cross-examination" appear between 'admitted' and 'but'. This intentional deletion by the legislature persuades us they intended such testimony as that proffered should have been admitted. Evidence, I. Judicial Decisions (C) Rehabilitation of Witnesses. 1 UALR Law Journal 191 (1978).

Testimony in a trial is one means by which we arrive at the truth. The modern trend is that the search of truth demands a liberal application of the Rules of Evidence.

We find no error in the Chancellor's allowing Attorney Manatt to testify as to the value of the Kent property. Attorney Manatt's experience and personal knowledge of the Kent property qualified him to express an opinion as to its value.

However, we do find error in the Chancellor's refusal to admit Dan Melton's testimony. His proffer showed his land was similar to the Kent property and that he was familiar with land prices in that area and that he sold it about 1976 and the two farms were approximately equal. The proffer was made saying he sold his land for $30,000.00 — $600.00 per acre — and the Kent land was better land, more productive and worth more — about $700.00 an acre. We find his testimony not irrelevant and should have been admitted under Rule 701 of the Uniform Rules of Evidence:

Opinion testimony by lay witnesses. — If the witness is not tesifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness; and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue.

The Chancellor allowed similar testimony by Attorney Manatt. This Melton testimony should have been considered on the issue of the value of the land.

Even though we find the Chancellor erred in excluding Attorney Holloway's testimony and in excluding Dan Melton's testimony, we find these exclusions to be harmless.

We are deciding this case "de novo". We therefore can consider the excluded evidence. Even after considering the evidence, we are not persuaded the Appellant Ms. Garis has proven her allegations that Lura Kent was incompetent and unduly influenced by fraud and duress at the time she conveyed her property to the defendant. We cannot say the Chancellor's finding was clearly against the preponderance of the evidence. *Newberry* v. *McClaren*, 262 Ark. 735, 575 S.W. 2d 438 (1978).

We therefore affirm.