Ray ROSE; Agnes PIERCE; Mary Ann FOSTER; and
Fern Pierce ABSHERE *v.* Delma D. DUNN
and Ann N. DUNN

84-143                                         679 S.W.2d 180

Supreme Court of Arkansas
Opinion delivered November 13, 1984

44

*Taylor, Vandergriff & Morris,* by: *David Vandergriff,* for appellant.

*F. H. Martin,* for appellee.

WEBB HUBBELL, Chief Justice. Appellants, heirs at law of Mills O. Pierce, deceased, appeal from a consolidated proceeding where the court below declared valid a will, a deed, and two trusts, all executed by Mills O. Pierce. Appellants argue that: (1) the trial court erred in finding that Mills O. Pierce was competent at the execution of his will and in finding that the execution of the will was a free and voluntary act done without undue influence; (2) the court erred in refusing to shift the burden of proof; (3) the court erred in finding the deed was supported by consideration. We affirm.

Mills O. Pierce, aged 89, and his brother Vernon Pierce, aged 82, had lived all their lives on their family farm until Vernon's death on April 9, 1979. After Vernon's death, Delma Dunn, a neighbor, moved in and stayed with Mills Pierce for seven to ten days. Shortly thereafter Mr. Dunn took Mills Pierce to Walter Niblock, an attorney in Fayetteville who had represented Mr. Dunn in the past. The purpose of the first visit to Walter Niblock was to discuss Vernon's estate. Mills Pierce made several subsequent visits to Mr. Niblock where the disposition of Mr. Pierce's property was discussed. These discussions led to Mr. Pierce's execution of a will, a deed, and two trusts. The deed conveyed to Delma D. Dunn and Ann Dunn, appellees, the 160 acre farm owned by Mills Pierce for $1.00 and appellees' promise to provide a home for Mr. Pierce until medical determination of his need for nursing home care. The will devised Mr. Pierce's cash, bank account balances, and certificates of deposit to two trusts and the residuary of the estate to appellees. The two trusts provided scholarships for

graduates of Prairie Grove High School. The trustees are Delma Dunn, Robert Shulstad, and Walter Niblock.

Ordinarily the party challenging the validity of a will is required to prove by a preponderance of the evidence that the testator lacked mental capacity or was unduly influenced at the time the will was executed. *Thompson* v. *Orr Estate,* 252 Ark. 377, 479 S.W.2d 229 (1972); *Sullivant* v. *Sullivant,* 236 Ark. 95, 364 S.W.2d 665 (1963).

Undue influence which avoids a will is not the influence which springs from natural affection or kind offices, but is such as results from fear, coercion, or any other cause that deprives the testator of his free agency in the disposition of his property, and it must be specially directed toward the object of procuring a will in favor of particular parties. *Green, Guardian* v. *Holland,* 9 Ark. App. 233, 657 S.W.2d 572 (1983); *Sullivant* v. *Sullivant,* 236 Ark. 95, 364 S.W.2d 665 (1963); *McCulloch* v. *Campbell,* 49 Ark. 367, 55 S.W. 590 (1887). The mere fact that a beneficiary is present while a will is made does not give rise to a presumption of undue influence. *Abel* v. *Dickinson,* 250 Ark. 648, 467 S.W.2d 154 (1971).

Appellants first argue error in the trial court's finding that Mills O. Pierce was mentally competent and executed his will by free and voluntary act without undue influence The question of undue influence and mental capacity are so closely interwoven that they are considered together. *Neal* v. *Jackson,* 2 Ark. App. 14, 616 S.W.2d 746 (1981); *Phillips* v. *Jones,* 179 Ark. 877, 18 S.W.2d 352 (1929).

When Mr. Pierce could not definitely make up his mind about the beneficiaries of his will, the attorney asked him to go home, figure out what he wanted to do, and then come back. At the next meeting, the attorney testified that, although Dunn was present during the initial discussion, he asked Dunn to leave in order to satisfy himself that Mr. Pierce knew what he wanted to do. The attorney stated that he broached the subject of leaving the property to family members but that "I was put in my place in a hurry." He further stated that Mr. Pierce was "firm in his convictions as

to what he wanted to do." Mr. Pierce's physician testified that he examined him for arthritis a few days after the execution of the will. The doctor stated he found evidence of a small stroke, but went on to state: "You suspect some of these things, and particularly in a man of his age, but as far as affecting his competency, I did not feel that it did in any way, shape, or form." Mr. Pierce's banker testified that Mr. Pierce had always handled his own affairs, had a mind of his own, and made his own decisions. He further stated that during the same month Mr. Pierce was visiting the attorney, Mr. Pierce continued to do his own banking and, in his opinion, was competent. We cannot say the trial court was clearly erroneous in finding that Mr. Pierce had both the testamentary capacity and freedom of will to execute a valid will.

The law regarding mental capacity in the execution of a will is also applicable to the execution of a deed and the creation of a trust. If the maker of a deed, will, or other instrument has sufficient mental capacity to retain in his memory, without promptings, the extent and condition of his property, and to comprehend how he is disposing of it, and to whom, and upon what consideration, then he possesses sufficient mental capacity to execute such instrument, *Garis* v. *Massey*, 270 Ark. 646, 606 S.W.2d 109 (Ark. App. 1980); *Pledger* v. *Birkhead*, 156 Ark. 443, 246 S.W. 510 (1923). The mental capacity of the maker of a trust or deed is presumed, and the burden rests on the contestants to prove incapacity by a preponderance of the evidence. *Union National Bank of Little Rock* v. *Smith*, 240 Ark. 354, 400 S.W.2d 652 (1966); *Gibson* v. *Gibson*, 156 Ark. 528, 246 S.W. 845 (1923). Thus a finding of requisite mental capacity to execute a will must equally apply to a deed created on the same date as the will and a trust recited in the will.

Probate and chancery cases are tried de novo on appeal, but we will not reverse the findings of the probate judge or the chancellor unless clearly erroneous. ARCP 52. After giving due deference to the superior position of the chancellor to determine the credibility of the witnessess and the weight to be given their testimony, we cannot say his finding that appellants failed to prove undue influence by a

preponderance of the evidence was clearly erroneous.

Appellants further contend the trial court erred in refusing to shift the burden of proof. In the case of a beneficiary who procures the making of a will, a rebuttable presumption of undue influence arises which places on the beneficiary the burden of proving beyond a reasonable doubt that the testator enjoyed both required mental capacity and freedom of will. *Park* v. *George, Pers. Rep.*, 282 Ark. 155, 667 S.W.2d 644 (1984); *Greenwood, Guardian* v. *Wilson, Adm'x.*, 267 Ark. 68, 588 S.W.2d 701 (1979). A threshhold question, then, is whether appellees, who were residuary beneficiaries of the will, procured the making of Mills O. Pierce's will. In the case of *Park* v. *George, Pers. Rep.*, 282 Ark. 155, 667 S.W.2d 644 (1984), an attorney who named himself as a beneficiary in the amount of $10,000.00 drew a will for an 88 year old woman who had been hospitalized and sedated and who appeared confused and upset. In the case at bar, Delma Dunn merely drove Mr. Pierce to the attorney's office and participated in the initial discussions concerning making a will. The court found that Mr. Pierce was possessed of both testamentary capacity and freedom of will. Where a competent individual freely and voluntarily executes his own will, it cannot be said that another procured the making of that will.

Even had the trial court found that Delma Dunn had procured the making of Mr. Pierce's will, the trial court would have been correct in ruling that the presumption of undue influence in the case of a beneficiary who procures the making of a will does not shift the ultimate burden of proof. In *Hiler* v. *Cude*, 248 Ark. 1065, 455 S.W.2d 891 (1970), we were asked to hold that where a proposed will is drawn by a beneficiary, the burden of proof will shift. In *Hiler* we said, "We hold this burden, in the sense of the ultimate risk of non-persuasion, never shifts from the contestant. This does not, however, conflict with the rule concerning the burden of going forward with the evidence or the burden of evidence." The result of the presumption of undue influence in the case of a beneficiary who procures the making of a will is merely to shift the burden of proving lack of capacity or undue influence by a preponderance of the evidence remains

on the party challenging the will.

Appellants last argue that the chancellor erred in holding the deed was supported by consideration. For $1.00 and the promise of the Dunns to provide a home and care for him for the rest of his life, Mills quitclaimed his 160 acre farm to appellees reserving a life estate for himself. Support deeds are unquestionably valid in Arkansas. *Welch* v. *Brewer,* 267 Ark. 763, 590 S.W.2d 325 (1979); *Wood* v. *Swift,* 244 Ark. 929, 428 S.W.2d 77 (1968). The owner of property who is mentally competent may dispose of it as he sees fit. *O'Conner* v. *Patton,* 171 Ark. 626, 286 S.W. 822 (1926). When a conveyance is voluntary and absolute on its face, then the question of consideration is immaterial. See *Whatley & Wright* v. *Corbin,* 252 Ark. 561, 480 S.W.2d 142 (1972); *Szklaruk* v. *Szklaruk,* 251 Ark. 599, 473 S.W.2d 853 (1971). Inadequacy of consideration does not afford grounds for setting aside a voluntary conveyance. *Leake* v. *Garrett,* 167 Ark. 415, 268 S.W. 608 (1925). Moreover, the appellees actually provided for over two years the support and care promised in consideration for the property conveyed. The trial court did not err in holding the deed was supported by adequate consideration.

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. The trial court erred in not shifting the burden to the proponents of the will as we required in *Park* v. *George, Pers. Rep.,* 282 Ark. 155, 667 S.W.2d 644 (1984). It is a firmly established rule that a proponent of a will who is a beneficiary and drafted or caused the will to be drafted has the burden to prove beyond a reasonable doubt that it was not the result of undue influence and that the testator had the mental capacity to make the will. *Park* v. *George,* supra; *Smith* v. *Welch,* 268 Ark. 510, 597 S.W.2d 593 (1980); *Greenwood* v. *Wilson,* 267 Ark. 68, 588 S.W.2d 701 (1979); *Short* v. *Stephenson,* 238 Ark. 1048, 386 S.W.2d 501 (1965). *Park,* which I consider to be as close to the facts of this case as can be found in Arkansas law, is binding on this court.

In the present case the Pierce brothers were extremely close to each other and had lived together all their lives. Mills Pierce was 89 years of age and his younger brother Vernon was 82 when the younger brother died. Vernon was the dominant one. After the younger brother died Delma Dunn, a neighbor, moved into the house with Mills Pierce to take care of him. Immediately thereafter Dunn took decedent to see Dunn's lawyer, who had never met the decedent. Within a short time the decedent had deeded his farm to Mr. Dunn and given the rest of his property to trusts for purposes the decedent had never before mentioned. The trustees of the trusts were Mr. Dunn, his lawyer, and a third person who was not acquainted with the 89 year old decedent.

The majority and the trial court have simply reversed the burden of proof and sidestepped the issue of presumption as it applies to the facts in this case. The standard of proof applied here is that which should be applied to a will where neither party procured its execution. The majority would be right were it not for the fact that appellee procured the execution of the will and obviously benefitted from the whole transaction. A 160 acre farm for $1.00 and a few weeks caring for an invalid is a pretty good bargain. I submit that a reversal of the burden of proof caused the wrong result.