Bennett vs. Hutson et al.

## BENNETT v. HUTSON ET AL.

1. VENDOR AND VENDEE: *Resulting trust.*

An uncompleted sale, where a deed has been executed and the consideration has not been paid, and where there is no intention of a gift or a sale on time, makes a resulting trust in favor of the vendor; not for the purchase money, but for the whole land. Equity will treat it as no sale, and hold the vendee as trustee of the dry legal title ; and a purchaser from such vendee, with notice of the facts, will acquire no title.

2. FRAUDULENT CONVEYANCE: *When conveyance to wife is: Homestead not lost by.*

A conveyance to a married woman in consideration of payments made by the husband, is in effect as if he had taken the deed to himself and then conveyed to the wife ; and if made to avoid an existing debt of the husband, is, fraudulent and void to the extent of the creditor's rights, which may be enforced by proper preceedings, but not in contravention of the policy of the homestead laws in force at the time and applicable to the debt.

A debtor does not forfeit his homestead rights by making a fraudulent conveyance of the homestead.

3. EXEMPTED PERSONALTY: *May be sold by debtor ; property taken in exchange for, retains its own nature.*

Exempted personal property may be sold by the debtor, and the execution creditor cannot follow it into the hands of the purchaser. But property taken in exchange must take its position subject to the exemption laws in

Bennett vs. Hutson et al.

force. If it be personal, it must go to make up the amount exempted; if real, it must take its place subject to the laws governing real estate, and be exempt or not, as other property of like nature: and if the title be taken to a wife, child or stranger, being volunteers, courts of equity will subject it to the same burdens in favor of creditors, which it would have borne at law if conveyed to the debtor himself.

4. EQUITABLE INTERESTS: *Sale of, under execution; Practice in equity.*

The sale under execution at law, of equitable interests not well defined and marketable, has been strongly disapproved by this court. There is no objection to making the levy; and where the interest is ascertainable like the equity of redemption in an undisputed mortgage, etc., the sale may proceed; but in all cases where a bill in equity will in any event be necessary to fix an equity or determine its extent, it should be first fixed and then sold for its fair value. The better practice in all such cases after making the levy, is to file a bill in equity against all claimants to ascertain the true nature and extent of the equity.

Courts of equity should exercise a sound discretion and set aside sales under execution at law in all cases where the rights sold have been of such doubtful character as to deter fair competition.

HOMESTEAD: *Sale of, under execution. Scheduling.*

An insolvent debtor purchased land and had it conveyed to his wife, with a view to avoid an existing debt. Afterwards, while residing on it as a homestead, it was sold under execution at law for that debt. He forbade the sale on the ground that it belonged to his wife, but made no schedule of it as a homestead, and soon afterwards died in possession. Held, that his wife was not by the sale deprived of the homestead.

APPEAL from *Van Buren* Circuit Court in Chancery.

Hon. J. W. MARTIN, Circuit Judge.

*B. D. Turner, Jr., and J. H. Frazer,* for appellant.

*House, contra.*

EAKIN, J. :

Bennett sued Permelia J. Lay (now Hutson), for a tract of land, in the Code form of ejectment, founding his claim upon two deeds. One from Fountain M. Lay and his wife (said Permelia), to Nathan A. Sanders, bearing date of August 19, 1874 ; another from said Sanders and wife to plaintiff, of the 8th November, 1875.

Defendant denied plaintiff's ownership, and on her part claimed title under a deed to herself from James Brown and wife, of the 29th of May, 1874. She says that the contract of sale made by herself and husband to Sanders was made for cash, and that Sanders, finding himself unable to pay the same, had agreed to a rescission of the conveyance, and that defendant had notice of this when he purchased of Sanders. That she had remained in possession after the pretended sale, and that plaintiff had obtained the deed from Sanders by fraudulently pretending to be the owner, and without consideration. She makes her answer a cross-bill, brings in Sanders, asks that the cause be transferred to the equity side, and the deeds relied upon by plaintiff be canceled, or, as alternative relief, that she have a lien for the purchase money. The cause was transferred, and plaintiff given time to answer.

He then filed a supplemental bill and answer to the cross complaint, denying the agreement to rescind, or that he had notice of it, or that he obtained his deed by fraud. He sets up new and additional grounds of action, alleging, that in March, 1875, he recovered a judgment in the Circuit Court against Fountain M. Lay for $472.67, and costs. That shortly before that, Lay bought the lands from Brown, and had the deed made to defendant, his wife; that the same was kept secret and not recorded until April 29, 1875; that he sued out execution on the 16th of April, 1875, which was levied upon the lands; that they were sold under execution and bought in by him for $300, which sum after payment of costs, was credited on the judgment; and that he received the sheriff's deed in due course of time. Further, that at the time of the levy and sale said Lay owned no other real estate, save a homestead, on which he resided, and a very small amount of personal property; and that at the time of plaintiff's purchase, under the execution, he knew nothing whatever of the deed to Sanders.

In reply to this supplemental matter, defendant denied that the delay in recording the deed was from any fraudulent intent. She says the place was bought for a homestead, and that her said husband lived on no other; says that he owned no other lands, nor did she herself. That he was a married man, resident of the State, and the head of a family; was on his death bed when the sale under execution was made, and has since died, leaving his wife, the defendant, and four minor children.

Under this state of the pleading the proof conduces to show, that Fountain M. Lay was in debt to plaintiff in the month of May, 1874; that he was a man of small means, not having as much personal property as was exempt from execution under the Constitution of 1868; that he bought the land from Brown for the purpose of making it a home for his family, and had the deed made to his wife to avoid annoyance from creditors, having this debt in view. That he was in bad health and moved upon the place before the judgment was obtained under which plaintiff purchased. That he sent a friend to forbid the sale on the ground that the title was in his wife, but made no schedule of the property as his homestead, and that he soon aftewards died in possession.

During the previous summer, and after the purchase from Brown, he and his wife agreed to sell to Sanders for $600, to be paid in cash. The deed was written out and defendant, Permelia, acknowledged it before a magistrate, with her husband. On a separate examination she stated that "she had of her own free will signed and sealed the relinquishment of dower, and all her right, title, claim and interest in and to said lands, for the consideration and purpose therein mentioned, without compulsion or undue influence of her said husband." The deed, when prepared, was given to Sanders, with the understanding that he was to convert some county

securities into money and pay cash, and he filed it in the clerk's office, with instructions *not* to record it until further directed. Sanders being unable to raise the money, the contract, by mutual understanding, was rescinded, but the deed was left lying in the office. Some time after plaintiff's purchase under the execution, he discovered it by accident, and obtained a conveyance from Sanders for the nominal consideration of fifty dollars, which he has not yet paid. He then caused the old deed to be recorded with Sanders' deed to himself.

The levy of the officer under the execution, fails to designate whether the "township eleven," in which the land lies, is north or south of the base line, and misdescribes a division of a quarter section. The latter mistake is not repeated in the certificate of purchase.

Upon hearing, the Chancellor ordered the deeds from Lay and wife to Sanders and from the latter to plaintiff to be canceled; declared the levy and sale by the sheriff void, as well from uncertainty of description as because the title was in defendant. The sheriff's deed was canceled, and the title of defendant quieted. It was further ordered that the credit entered on the judgment be set aside. The plaintiff appealed.

The acknowledgment of Mrs. Lay is irregular. The land was hers, under the deed from Brown, and she should have acknowledged that she had *executed* it, or used equivalent words. That is proper where the wife's land is the subject matter. The magistrate's certificate also fails to show that she "voluntarily" appeared before him for separate examination.

It is unnecessary, however, to discuss the validity of the acknowledgment. An uncompleted sale, where the deed has been executed and the consideration has not been paid, and where there has been no intention of a gift or a sale on time, makes a resulting trust in favor of the vendor—not for the purchase money, but for the whole land. Equity will treat it

as no sale, and hold the vendee a trustee of the dry legal title. This is one of the fourth class of resulting trusts treated of by Mr. Bispham, in his excellent work on "Principles of Equity," sec. 79.

The plaintiff had notice of the circumstances, unquestionably. He was told by Sanders that he had no title, and as yet had paid nothing. This attempt to gain an advantage, and fortify his title was vain and futile; whether Mrs. Lay had properly acknowledged the deed or not. The equities of the plaintiff must rest wholly upon his judgment and proceedings under it.

The conveyance of the land by Brown to Mrs. Lay, upon consideration of payments made by the husband, was, in effect, as if Lay had taken the deed to himself and made a voluntary conveyance to his wife. It was done to avoid an existing debt, and must be held to the extent of the creditor's rights, to be fraudulent and void. The creditor had an equity, by proper proceedings, to subject the land to the payment of his judgment; so far as he might be able to do so without contravening the policy of the homestead laws, in force at the time, and applicable to that debt.

The debtor, however, would not forfeit the rights he had, by a vain attempt to confer greater upon his wife. Equity, in relieving the creditor, will not place him in a better position than he would have occupied if the defendant in execution had taken the legal title to himself.

It is contended, that inasmuch as the defendant in execution did not have as much personal property as was exempt, he might, without fraud, have used it in purchasing property for his wife—that nothing would be taken from creditors which they were entitled to seize; and they would have nothing of which to complain. It is certainly true that exempted per-

sonal property may be freely sold by the owner, and the execution creditor cannot follow it into the hands of the purchaser.

But property taken in exchange must take its position subject to the exemption laws in force.   If it be personal, it must go to make up the amount exempted.   If it be real it must take its place subject to the laws governing real estate ; and be exempt, or not, as other property of like nature ; and if the title be taken in the name of the wife, child or stranger, being volunteers, courts of equity will subject it to the same burdens in favor of creditors, which it would have borne at law, if conveyed to the debtor himself.   Just this much and no more. Equity will do justice, but not punish.   Whilst, on the one hand, it will not allow debtors to withdraw from their personal effects successive amounts just short of their exemptions, and invest them for the benefit of relatives, it will not, on the other, deprive them of their just and legal advantages of exemption as a penalty for unsuccessful efforts to evade the law.

The husband, when living, might, if the property had really been his own, have scheduled it as a homestead.   He did not choose to do so, but forbade the sale.   The property belonged to Mrs. Lay, as against her husband and all the world, except his creditors—and now, unless precluded by the sale, she has, even against creditors, the same rights of homestead which her husband had in his life time.   What has been the effect of the execution sale upon her rights !

By statute, in this State, executions may be levied upon "all real estate, whether patented or not, whereof the defendant, *or any person for his use*, was seized in law or equity on the day of the rendition of the judgment, order or decree whereon execution issued, or at any time thereafter."   Under this statute the practice has grown up of levying upon such equitable interests as debtors are supposed to have in property held in the

Bennett vs. Hutson et al.

name or others, under conveyances thought to be fraudulent, buying it in for a trifle, and then filing a bill to enforce the rights, whatever they may be.    At such sales there can be no competition.    They become mere speculations ; and oftentimes vast interests of innocent widows and children are swept away in consequence of attempted frauds on the part of those on whom they depend : which go to enrich creditors who were entitled to their debts and nothing more.    Whilst this court has been constrained to give reasonable effect to the act, and sustain sales of equitable interests in some cases, it has nevertheless appreciated the full force of the danger and injustice of the practice ; and wherever the equitable interest has not been well defined and marketable, has strongly disapproved of such proceedings.    There can be no objection to making the levy ; and where the equitable interest is ascertainable, like an equity of redemption under an undisputed mortgage, or trust deed, for specified debts, no injustice can result from proceeding with the sale.    But in all cases where a bill in Chancery will, in any event, be necessary, either to fix an equity or determine its extent, every consideration of humanity, justice, fair dealing and public policy demands that it should be first fixed and ascertained, and then sold for its fair value.    Where there must be a lawsuit, sold and bought, the competition will be only amongst speculators, and those of a class not to be encouraged.    Generally the creditor gets the land and retains the greater part of his debt.

The better practice in all such cases, after making the levy, is to file a bill against all claimants, to ascertain through a court of Chancery, the true nature and extent of the equity. The Chancellor may, after guarding all just rights, subject it to sale for the satisfaction of the judgment.    Thus a clear title or a well defined equity will be put upon the market, which bidders may buy at a fair value ; and the proceeds will go to

all beneficially interested. Justice will be done to creditors, whilst those entitled to the surplus will be protected without more litigation than would in any case have been inevitable.

Courts of Chancery, in pursuance of this policy of discouraging a pernicious use of the statute, should always exercise a sound discretion, and set aside such speculative sales in all cases where the rights sold have been of such a doubtful character as to deter fair competition. In all such cases the old principles governing creditors' bills should apply ; at least to the extent of suspending sales after levy until it may be ascertained what it is to be sold.

The pleadings in this case, after all amendments, stood as if the complainant had filed a bill to divest defendant's title, and to quiet his own under the sheriff's deed ; and as if the defendant, insisting upon her own title, had also set up the homestead right of her husband as an alternative defense. This he might have done if the deed to his wife had, in his life time, been declared fraudulent. The proof showed that the sale had been made under circumstances unfair towards the rights of the wife. The sale did not produce over one-half of the value of the land, and she was cut off from all advantage of a surplus, which might have resulted from a fair sale. Besides, she is entitled to some consideration with regard to the homestead right, which would have remained in the husband if the deed had been declared fraudulent.

The plaintiff comes in, seeking the aid of equity, and relief should be granted only on such terms as seem just. The Chancellor properly canceled the title derived through Sanders, and set aside the sale under execution, but erred in quieting defendant's title under the deed from Brown. The question of validity of the levy becomes unimportant.

For the error just noted, let the decree be reversed and the cause be remanded, with directions to the court below to enter

a decree there declaring the conveyance of Brown to defendant fraudulent, as against the judgment of complainant against her husband ; and that said judgment be declared a lien upon said lands to remain until the same be satisfied, but not to be enforced during the time said lands may be occupied as a homestead by defendant, or any of the minor children of Fountain M. Lay, deceased. The appellee will be charged with the costs of this court and the whole costs of the court below will be in the discretion of the Chancellor.