REEVES v. SLADE.

Opinion delivered November 14, 1903.

1. FRAUDULENT CONVEYANCE—HUSBAND AND WIFE.—A debtor bought lands, and had title conveyed to his wife in payment of a sum that he owed her for money which she had permitted him to use for several years as his own, without any agreement to repay it. Neither of them seems to have contemplated its repayment until he became insolvent, and had acquired more real estate than he was entitled to hold exempt from sale under execution. *Held*, that the conveyance to the debtor's wife was in fraud of his creditors. (Page 613.)

2. SAME—HOMESTEAD AS CONSIDERATION.—In a suit by creditors of an insolvent debtor to subject land which he had fraudulently procured to be conveyed to his wife, it is no defense that the consideration for the land was the exchange of the debtor's homestead. (Page 613.)

Appeal from Faulkner Chancery Court.

THOMAS B. MARTIN, Chancellor.

Affirmed.

*G. W. Rice,* for appellants.

Appellants had not abandoned their homestead. 37 Ark. 283; 48 Ark. 539; 55 Ark. 55; 56 Ark. 621. The lien of a judgment does not attach to the homestead. 56 Ark. 158; 52 Ark. 101. There are no creditors as to exempt property. 31 Ark. 546; 43 Ark. 434; 52 Ark. 101; 57 Ark. 242; 67 Ark. 133. No presumption of fraud arises from payment of money for support of family. 57 Ark. 331; 67 Ark. 110. The proof should have shown that the money used by appellant was subject to his debts. 18 Ark. 123; 20 Ark. 216. The appellant had a right to make a gift of his homestead. 56 Ark. 156; 52 Ark. 101, 493. Insolvency must be proved. 56 Ark. 285.

*G. W. Bruce,* for appellee.

BATTLE, J.   On the 25th day of November, 1892, G. W. Bruce and others recovered a judgment before a justice of the peace of Faulkner county against H. M. Reeves for $66.66 and all costs, and in 1896 they sold and transferred the judgment to J. D. Slade. On 11th of December, 1899, Slade recovered a judgment before a justice of the peace of the same county against Reeves, in a suit upon the judgment transferred to him, for the sum of $102.96 and costs.   Execution was issued on the latter judgment by the justice of the peace on the 21st of December, 1899, and a return of *nulla bona* was made.   The justice of the peace then, at the instance of plaintiff Slade, filed, on the 24th of January, 1900, a certified copy of the judgment in the office of the clerk of the Faulkner circuit court; and the clerk, on the same day, entered the judgment in the docket for judgments and decrees of that court, and issued an execution thereon, which was, on the next day, returned by the sheriff "Unsatisfied, not finding any property to levy on."

On the 26th of January, 1900, J. D. Slade commenced a suit in the Faulkner chancery court against H. M. Reeves, Dora Reeves, his wife, George Doneghey, D. O. Horton and A. J. Witt, alleging in his complaint, in addition to the facts already stated, that H. M. Reeves had purchased certain one hundred and seventy-seven acres of land in Faulkner county, and caused his vendors to convey the same to his wife, Dora Reeves, for the purpose of defrauding his creditors, and especially the plaintiff; and asking that the deed to Mrs. Reeves be set aside, and that the lands thereby conveyed be sold to satisfy his judgment.   Reeves and his wife filed separate answers, in which they deny fraud, and allege that Reeves was indebted to his wife in the sum of $385, and owned in the town of Conway a certain town lot, which was his homestead; that he conveyed this lot to Mrs. Malinda King and her adult children in part payment of the purchase money for the lands in controversy, valuing the lot at $500 and the lands at $800; that, Reeves having paid the taxes then due upon the lands, amounting to $11.76, this sum was deducted from $300, the balance of the purchase money, and Mrs. Reeves executed her note for $288.24, the remainder; and that thereupon, on the 13th day of January, 1896, he caused the Kings to convey the lands to Mrs. Reeves for the purpose of paying his indebtedness to her.   Upon the maturity of the note given by Mrs. Reeves, suit was instituted on it by the Kings; they seeking a judgment *in personam,* and the foreclosure of a vendor's lien upon the lands.   This action progressed to a decree, which Reeves paid

with money borrowed from the Bank of Conway on his note, upon which D. O. Horton and W. W. Martin were sureties. When the last-mentioned note became due, Reeves paid it, using his money and $250 borrowed from defendant Doneghey on a note executed by him as principal, and D. O. Horton and A. J. Witt, as sureties, to whom (Horton and Witt) he and Mrs. Reeves executed a mortgage on the one hundred and seventy-seven acres of land to secure them against loss on account of their suretyship. The note to Doneghey is due and unpaid.

After hearing the evidence adduced by all of the parties the chancery court ordered and decreed that the 177 acres conveyed by the Kings be sold to satisfy the indebtedness of Reeves to the plaintiff, subject to the mortgage in favor of the defendant Doneghey; and Reeves and his wife appealed.

The lands in controversy were purchased and paid for with the property of H. M. Reeves. No other property except his was used in paying for them. But it is said that he caused the lands to be conveyed to his wife in payment of $385 that he owed her for money which she had permitted him to use for several years as his own, without any agreement to repay it. She says that she does not remember of any agreement to repay. Neither she nor Reeves undertakes to fix any day on which she loaned him the money, or on which he was to return it. In fact, neither of them seems to have contemplated its repayment until after G. W. Bruce and others had recovered a judgment against him, and until he had become insolvent, and had acquired more real estate than he was entitled to hold exempt from sale under execution, when he sought to place all his property in the name of his wife for the express purpose of repaying money long used as before stated. Without a further statement of facts, it is sufficient to say that the chancery court, in our opinion, did not err in finding that the conveyance of the lands in controversy to Mrs. Reeves was fraudulent.

But appellants contend that the town lot conveyed by Reeves to the Kings in exchange was his homestead, he being at the time a married man and a resident of this state; that it was not subject to the lien of any judgment or decree of any court, or to sale under execution or other process thereon, except those mentioned in the Constitution; and that no conveyance thereof by him can be legally set aside because it was fraudulent as to creditors. Be this as it may, he has never occupied the lands in controversy. They have never been his homestead. But, on the contrary, he was, before and

at the time the Kings conveyed to Mrs. Reeves, and thereafter has been, residing on a town lot which he purchased and paid for with a horse and wagon, and caused to be conveyed to his wife, subject to a certain mortgage. The facts show that he never intended to hold the lands as a homestead, nor does he claim to have held them as such. The question is not whether he could convey his former homestead to the Kings, but could he convey or cause to be conveyed, in fraud of his creditors, the one hundred and seventy-seven acres of land which he purchased from the Kings? When he purchased them, they became, as his other real estate, subject to sale under execution against him so long as they do not constitute his homestead; and, the title to the same being taken in the name of his wife for the purpose of defrauding creditors, they are subject, in equity, to the same burdens in favor of creditors which they would have borne if they had been conveyed to Reeves himself. *Bennett v. Hutson,* 33 Ark. 762, 768.

Decree affirmed.