FULLERTON *v.* FULLERTON.

5-2312                                           348 S. W. 2d 689

Opinion delivered May 29, 1961.

[Rehearing denied September 11, 1961.]

*James R. Howard* of *Moses, McClellan, Arnold, Owen & McDermott,* for appellant.

*G. P. Houston, Murphy & Arnold,* for appellee.

CARLETON HARRIS, Chief Justice. This case is here for the second time on appeal, and involves the owner-ship of two separate tracts of land, one, a six-acre tract on which the home place is located, and the other, an adjoining forty-acre tract. The parties hereto were hus-

band and wife, residing in Heber Springs, Cleburne County, Arkansas. In July, 1944, the six-acre tract was deeded to appellant by third parties, while appellee was serving with the armed forces. In April, 1946, the forty-acre tract was acquired, likewise being deeded to appellant. The Fullertons lived on the properties until late in 1955, when appellant came to Little Rock. She filed a complaint for absolute divorce in the Pulaski Chancery Court, alleging general indignities. The complaint contained a paragraph as follows: "Plaintiff states there is no property right or title, either real or personal, at issue in this cause of action * * *." In his answer, Mr. Fullerton denied the material allegations of the complaint, but agreed "there are no property rights involved herein * * *." On May 4, 1956, the Chancery Court entered its decree granting appellant an absolute divorce, and directing the payment of alimony and attorney's fee. Subsequently, appellant filed her petition, asking that appellee be cited for contempt for failure to make the payments required under the decree. Fullerton failed to appear on the date set for hearing, and the court entered an order directing Fullerton to "vacate the premises and property belonging to Plaintiff, Lois Fullerton, situated in Cleburne County, Arkansas." Fullerton then filed a petition asserting unemployment and physical inability to work, and further alleged that the farm was his own property, inasmuch as, while a member of the armed forces, he had sent the money for the purchase of same, and that his then wife had acted fraudulently in obtaining the deed, and he had only recently learned of her fraud and deception. In her response, appellant asserted that she had owned the lands for more than seven years with the full knowledge of appellee, and that any claim or cause of action against the property should have been presented by him to the court prior to the entry of the original divorce decree. On hearing, the court confirmed title to the forty acres in Mrs. Fullerton, and further decreed that title to the six-acre tract was held by the parties as tenants by the entirety. On appeal, we reversed the decree, holding that the Pulaski Chancery Court was

without jurisdiction to determine the issue of the owner-
ship of the property. See *Fullerton* v. *Fullerton*, 230
Ark. 539, 323 S. W. 2d 926. This Court said:

"We do not pass upon any question relating to
ownership of the property. * * * The ownership of
the property can now only be legally determined by the
proper court in Cleburne County."

On July 23, 1959, appellee filed his complaint in the
Cleburne Chancery Court, containing the same allega-
tions relative to the purchase of the property, as in his
Pulaski County petition; further, that he had placed
improvements on the lands in the amount of $11,000,
and he asked that the court cancel and void the two
deeds, and quiet and confirm title in him. Appellant
filed her answer, denying the allegations, asserting that
the property was purchased by her with her own money,
and that appellee had long been aware of the fact that
title to the properties was in her; that appellant had
been in wrongful possession of the tracts since 1956,
and should be required to pay to her the reasonable
value of the rental on said properties since that date.
On trial, the court held as follows:

"The above described Forty-Acre tract of land is
the sole and separate property of Lois Fullerton, and
title thereto is hereby vested and confirmed in the said
Lois Fullerton; That title to the above described Six-
Acre Tract of land is in Lois Fullerton and Ira Fullerton
as owners by the entirety, and title to same is hereby
vested and confirmed in them as such.

That the reasonable rental value of the Six-Acre
Tract of Land is $40.00 per month and that Ira Fuller-
ton is hereby ordered and directed to pay to Lois Ful-
lerton One-Half thereof, or $20.00 per month so long as
he shall remain in exclusive possession of the said Six-
Acre Tract of Land."

The Chancellor further found that Fullerton had been
in possession of both tracts of land since the divorce;
that he had made improvements on the lands, "the value

of which is equal to any rent which might have accrued to Lois Fullerton by reason of her interest therein, and that the rent, if any, to which the said Lois Fullerton might be entitled, is off-set by the improvements made by Ira Fullerton.'' The $20.00 per month ordered paid was based on the fact that the court found the reasonable rental value of the six-acre tract to be $40.00 per month. Appellant appeals from that portion of the decree finding that the six-acre tract is held by the parties as tenants by the entirety, and also from that portion which sets off the improvements placed on the forty-acre tract against the rental value. Appellee cross-appeals from the entire decree.

We first discuss the circumstances surrounding the purchase of the six-acre tract. This tract was acquired in July, 1944, from Vernard Stanton and wife. Fullerton testified that his wife wrote him (appellant was then stationed in New Orleans), and advised that the Stantons had offered to take $900 for the tract; that they would require $50 down and $10 per month. The witness stated that he wrote his wife back, and told her that he did not desire to purchase the property on the installment plan, and directed that she ascertain the cash price that would be acceptable to the Stantons. After receiving her letter stating that the Stantons would accept $700 cash, he wrote her a check for that amount, sent it to her, and told her to buy the property. Appellee testified that he sent his wife money to live on between February and July, but did not make an allotment to her until after the six-acre tract was purchased. According to his evidence, he sent her $250 after three weeks' service, and approximately $100 a month thereafter until after the allotment started, this last being in the amount of $175, and commencing in October, 1944. Mrs. Fullerton testified that she learned the property could be purchased for $700, ''and I thought we should buy it.'' According to her evidence, she wrote her husband, and he told her that if she wanted the property, to buy it, and purchase it in her name. She denied that he sent the $700 check, but stated that she purchased the tract with money from the bank account; that it was her

money. "He had sold his pickup truck, and left this money for me to get by on while he was gone." The witness stated that only $500 or $600 was in the bank, but her husband was sending her money each month, and she put everything in the bank "except what I had to get by on." The record reflects that the property was paid for by check from Mrs. Fullerton, appellee contending that she tore up the check that he sent. It is interesting, in view of appellant's contention that it was understood between the parties that the property was being purchased by her, and solely for her benefit, to note statements from her testimony. For instance, during examination by her attorney:

"Did he tell you when he left that he wanted you to use this money for any particular purpose, these hundred dollar payments he'd sent you, or hundred and a quarter, whatever . . . (Interrupted).

"A. Well, not, not particularly when he left until we[1-a] decided to buy this little place."

Further:

"Well, I would write Ira, and he'd write back, and I wrote him, of course, about that we[1-b] could buy it, and he wrote back and told me to go ahead and buy the property in my name."

Appellant contends that since Mr. Fullerton did not assert his alleged rights in the property in the Pulaski County divorce suit, he is now, under the doctrine of *res judicata*, precluded from doing so, this argument applying to both the six-acre and forty-acre tracts. We hold this contention to be without merit. See *Deal* v. *Deal*, 220 Ark. 134, 264 S. W. 2d 429. This argument was also made in *Fullerton* v. *Fullerton, supra,* and, of course, if we had found that the original divorce decree did adjudicate the property rights between the parties, the plea of *res judicata* would have been sustained at that time.

Likewise, appellant argues that appellee is now estopped to deny the title of appellant to either tract.

---

[1-a, 1-b] Emphasis supplied.

This argument is predicated on the pleadings in another case, *Klinefelter* v. *Fullerton, et al,* filed in the Cleburne County Chancery Court in 1950. There, apparently, Mrs. Bertha Klinefelter claimed to be a co-tenant with Stanton's grantors (who later conveyed the six acres to Mrs. Fullerton), and asserted that she had not joined in the deed; the same contention was made relative to the forty acres, which was deeded to appellant by C. E. Fraser and wife. In their answer, the Fullertons asserted "that the defendants, Lois and Ira Fullerton, are the owners of, and in possession of, the following described land situated in Cleburne County, Arkansas, and the plaintiff has no interest in said lands" (listing the property here involved). In the prayer, the Fullertons asked that title be "quieted in the defendant, Lois Fullerton, *as against the plaintiff* * * *.""[2] The Fullertons likewise filed a cross-complaint, paragraph four of which, provides, "Vernard Stanton and his wife, Alma Stanton, conveyed by general warranty deed, to Lois Fullerton, the above described six acres * * *." Paragraph six asserts that "C. E. and Ernestine Fraser conveyed to Lois Fullerton by general warranty deed the above described forty acres, conveyed by A. L. and Ruby Lessard to the Frasers." Paragraph seven provides that "Lois and Ira Fullerton further say that a consideration of $700.00 was paid for the six-acre tract of land and $1,500.00 was also paid by them for the forty-acre tract of land." The answer was signed by both Mr. and Mrs. Fullerton, and verified by Mrs. Fullerton. The cross-complaint was signed by the attorney for the Fullertons, and verified only by appellee. We agree that the pleadings were proper evidence to aid the court in determining the rights of the parties, but we do not agree that appellee is estopped to question appellant's title because of allegations contained in those pleadings. In fact, about all that is shown by the pleadings is that the title to the property was purchased in the name of Mrs. Fullerton, and, of course, that fact occasions this litigation. Actually, some of the allegations, quoted above, would indicate co-ownership. At any rate, it is not shown that

---

[2] Emphasis supplied.

appellant was misled to her detriment by the conduct of appellee; as far as the property is concerned, the parties occupy the same position that they held at the time of the Klinefelter litigation, except that they are no longer husband and wife. Appellee testified that he has paid the taxes and insurance each year since returning from the Army, except for one year, when he was confined to the Veteran's Hospital. This testimony is not disputed.[3]

We think the Chancellor was clearly correct in finding that the six-acre tract is held as an estate by the entirety. Admittedly, Mrs. Fullerton was not working at the time this tract was purchased, and accordingly, the money used for the purchase was turned over to appellant by appellee. Mrs. Fullerton admitted that the truck (which was sold for $700 and the money deposited) belonged to both, and her statements, heretofore quoted, are potent evidence that the six-acre tract was purchased for the benefit of both. We think the Chancellor's finding was not only supported by the weight of the evidence, but also reaches an equitable conclusion.

Relative to the forty-acre tract, Fullerton testified that he was sent home from the Army in 1946 for a rest, and that a man by the name of Fraser offered to sell him forty acres joining the six-acre tract for $1,500 cash; he wrote a check in that amount, and left it with his wife, for the purpose of making the payment when the deed was delivered. Mrs. Fullerton agreed that her husband wrote the check in payment of that tract, but stated that he purchased it and insisted that "it be put in my

---

[3] V. H. Dickson, insurance agent of Heber Springs, testified that he carried the insurance on the property, and that the insurance had been originally written in the name of "Ira and Lois Fullerton"; that in 1956, Mrs. Fullerton wrote him from Little Rock "that the property was then hers individually", and he accordingly changed the name of the assured to read, "Mrs. Lois Fullerton." Subsequently, in the same year, he again amended it, "Ira and Lois Fullerton." The witness testified that Mrs. Fullerton paid the premiums while appellee was in the Army, but that he had made all payments since 1946. He also testified that he met appellant one day in Blass' store in Little Rock, along about the time the premium was due, and she asked if it had been paid. Dickson then told her that it had not, "but Ira had always taken care of it promptly, and if he did not, I would let her know; and he came in and paid it."

name.'' When asked if she had any idea why he placed the title to the forty-acre tract in her name, appellant replied:

''The only reason I can think, he had an ex-wife that he thought that he might have to—might sue him for some back alimony or something. We had also had some domestic trouble before that, and he'd gone with some little girls, under age. He probably thought maybe that they might sue him or something, and he wanted it all in my name. Now that's the only reason, the only things that I can think of.''

We have many times held that where a husband purchases and pays for lands, taking the deeds therefor in the name of his wife, there is a presumption of a gift to her. See *Simpson* v. *Thayer,* 214 Ark. 566, 217 S. W. 2d 354. The Chancellor found ''that Lois Fullerton has proved by a preponderance of the evidence that title to the forty-acre tract of ground was purchased by Ira Fullerton and placed in her name, and therefore is a gift to her and is her sole and separate property.'' This finding means that the court rejected appellee's testimony that he had given his wife the check for the forty acres, telling her to purchase the property in his name, but rather, found that the property was purchased by Fullerton, and at his direction, placed in his wife's name. Certainly, we cannot say this finding was erroneous or against the preponderance of the evidence. The Chancellor saw the witnesses, observed their demeanor on the stand, and was in a better position to determine the true facts. Appellee states: ''Even if appellant's testimony be accepted, we have her own statement that title was placed in her, not as a gift to her, but as a purpose to permit appellee to defeat the payment of some potential judgments.'' This testimony by Mrs. Fullerton cannot benefit Mr. Fullerton, for we have held that a husband who conveys land to his wife in fraud of creditors, is not permitted to invoke the assistance of equity in setting aside the deed, for he does not come into equity with clean hands. See *McClure* v. *McClure,* 220 Ark. 312, 247 S. W. 2d 466, and cases cited therein.

The fact that this conveyance was not made directly to appellant by appellee is of no moment, for, under our holdings, a conveyance by a third person to the wife, upon consideration of payments made by the husband, is, in effect, the same as if the husband made the conveyance to the wife himself. See *Bennett* v. *Hutson, et al,* 33 Ark. 762.

On the whole case, we are unable to say that the Chancellor's findings are against the preponderance of the evidence.

Affirmed on both direct and cross-appeal.