OSBORNE *v.* CLARKSON, EX'X.

5-3108                           372 S. W. 2d 622

Opinion delivered November 18, 1963.

[Rehearing denied Dec. 23, 1963.]

*James R. Hale,* for appellant.

*John W. Cloer,* for appellee.

CARLETON HARRIS, Chief Justice. This litigation relates to the proper construction of a deed. J. H. Fletcher and Ella Grimes Fletcher were husband and wife. Both had been previously married, and had children by the prior marriages. No children were born of the union of Mr. and Mrs. Fletcher. On August 26, 1905, Mrs. Ada Bevers and Joseph D. Bevers,[1] her husband, conveyed certain property in the town of Springdale to Mrs. Ella G. Fletcher, the granting clause providing: "do hereby grant, bargain, sell and convey unto the said Mrs. Ella G. Fletcher, her heirs and assigns, the following described lands, situated in Washington County, State of

---

[1] The connection, or relationship, between the Bevers and Fletchers is never shown in the record.

Arkansas, to-wit: (here follows description of property conveyed, which consisted of four lots in Block 9 in Springdale)."

The habendum clause provides as follows:

"To have and to hold the said lands and appurtenances thereto belonging unto the said Ella G. Fletcher and unto her heirs and assigns forever, and I the said Ada Beavers hereby covenant that I am lawfully seized of said land and that I will forever warrant and defend the title to said land against all legal claims whatever, And, I, the said Joseph D. Bevers, husband, in consideration of said sum of money do hereby release, relinquish and convey unto the said Ella G. Fletcher, all my right, title, dower, and right of homestead in and to said lands."

Immediately following the description of the conveyed lands in the deed, there appears a clause, which is the subject of this litigation. That clause provides:

*"The conditions of this deed is as follows, to-wit: at the 'deth' [sic] of the said Ella G. Fletcher, the title of the above said property to revert back to John H. Fletcher or his heirs."*[2]

J. H. Fletcher died in 1931. On August 15, 1962, Ella G. Fletcher passed away. Mrs. Fletcher left a will, in which, after making several specific bequests (not here involved), she left all of the remainder of her property, real and personal, (the general residuary paragraph), to her grandchildren, Mildred Clarkson, and John Lynn Fletcher. These two parties are the appellees herein. John. F. Mullins and Eula Osborne are grandchildren of J. H. Fletcher, and are the appellants in this case. This action was commenced in the Washington Chancery Court by Mildred Clarkson, individually, and as executrix of the estate of Ella Grimes Fletcher, and John Lynn Fletcher, wherein a construction of the italicized clause was sought, the complaint containing the prayer that appellees be held to be the

---

[2] Emphasis supplied.

owners in fee of the lands and that the provision in question be declared void and of no effect, and repugnant to the grant of the lands to Ella Grimes Fletcher. After the filing of an answer, the case proceeded to trial, and at the conclusion of the evidence, the court rendered a lengthy opinion in which it held that the deed was not effective to confer any interest of any nature to John H. Fletcher or his heirs, but rather that the deed conveyed a fee simple title to Ella Grimes Fletcher. The court then entered its decree, holding that "said provision in said deed is declared void for uncertainty, and is of no effect, and is repugnant to the grant of the lands in fee simple to Ella G. Fletcher, and that a fee simple title was vested in Ella G. Fletcher at the time of the execution of said deed by Mrs. Ada Bevers and Joseph D. Bevers, her husband to said Ella G. Fletcher, and plaintiffs[3] are the owners of said lands above described as sole devisees of said Ella G. Fletcher, deceased." From this decree, appellants bring this appeal.

We have reached the conclusion that the court erred in its findings. While we have no cases in Arkansas with a similar factual background, our principles of construction is well expressed in *Carter Oil Co.* v. *Weil*, 209 Ark. 653, 192 S. W. 2d 215. There, this court, referring to the case of *Luther* v. *Patman*, 200 Ark. 853, 141 S. W. 2d 42, stated:

"In that case Mr. Justice Humphreys, speaking for an undivided court, quoted with approval the statement of the law from 16 Am. Jur. § 237, p. 570, to the following effect: That the modern and now widely accepted rule to determine the estate conveyed by a deed with inconsistent clauses has for its cardinal principle the proposition that if the intention of the parties is apparent from examination of the deed 'from its four corners' without regard to its technical and formal divisions, it will be given effect even though, in doing so, technical rules of construction will be violated."

The above quotation states the rule which has been adhered to by this court for a long number of years, and

---

[3] Appellees herein.

it is by following this rule, *i.e.*, viewing the instrument here in question, "from its four corners," that we have concluded that the decree must be reversed.

Certainly, the clause was inserted for a purpose. The grantors meant to do "something," else there would have been no occasion to insert the provision in question. We think it absolutely clear, from the language employed, that the grantors had only one thing in mind, and that was to convey to Ella Grimes Fletcher a life estate in the property, with remainder in fee in John H. Fletcher or his heirs. It is true that the words used are technically incorrect, but when the entire instrument is scrutinized, we think the intent of the Bevers is unquestionably established. The learned Chancellor was evidently of the opinion that the provision in question was void because of the use of the language, "revert back," John H. Fletcher having no prior interest in the lands, and he held that a remainder interest was not created in the instrument, but that the deed conveyed a fee simple title to Ella Grimes Fletcher. A case bearing great similarity to the instant litigation is *Petty* v. *Griffith, et al* (Mo.), 165 S. W. 2d 412. There, the validity of certain deeds was questioned. The nature of the instruments is best explained in the language of the court:

"The first deed ('Exhibit 1') is dated January 3, 1923, and recites that Lucina B. Franklin is the party of the first part and that Bell Ford Griffith is the party of the second part. It says: 'That the said party of the first part, in consideration of the sum of One Dollar and Love and affection * * * to her paid * * * does by these presents Grant Bargain and Sell, Convey and Confirm, unto the said party of the second part, her heirs and assigns, the following described * * * land.' Following the description is this paragraph: 'The intention of grantor herein being to convey to the said Belle Ford Griffith, grantee herein, a life estate only, and at her death to revert to G. M. Beal of Fremont County, Iowa, and his legal heirs.'

"The clause defining the estate granted (the habendum clause) recites that the grant is 'unto the party of

the second part, her heirs and assigns, forever.' The deed recites the covenants usually contained in a warranty deed.

"The second deed ('Exhibit 2'), conveying a different tract of land, is exactly like the first deed except for slight differences in the paragraph following the description. That paragraph in the second deed says: 'The intention of Grantor being to convey to the said Belle Ford Griffith, grantee herein, a life estate only, and at her death to revert to G. M. Beal of Fremont County, Iowa, and his legal heirs only.' "

It will be noted that the only difference in those deeds and the one here in question is that, following the description, the term, "life estate," is used, although both the granting and habendum clauses, purportedly convey a fee simple title (as here), and the disputed clause also uses the term, "revert to G. M. Beal of Fremont County, Iowa, and his legal heirs" (here, "to revert back to John H. Fletcher or his heirs"). There, it was contended that Beal was a "stranger," the same contention being made as to J. H. Fletcher in this case. There, too, the trial court reached the conclusion that the fee simple title was in Belle Ford Griffith, and that the heirs of G. M. Beal had no interest whatever in the land by reason of these deeds. The Supreme Court of Missouri, in a comprehensive opinion, reversed the trial court judgment, and the reasoning used by the court is quite, apropos to the case at bar, since the same arguments were there advanced by the appellees as present appellees present for our consideration. Since the facts in the Missouri case are so very similar, and the reasoning employed by the Missouri court completely expresses our own views, we quote from the opinion of the Missouri Supreme Court as follows:

"Did Lucina Franklin, by these deeds, convey her fee simple title in the land to Belle Ford Griffith? Or, did she convey Belle Ford Griffith a life estate only and convey the remainder in fee simple to the heirs of G. B. Beal?

"The trial court concluded that the fee simple title was in Belle Ford Griffith and that the heirs of G. B. Beal had no interest whatever in the land by reason of these deeds. Belle Ford Griffith's argument in support of the trial court's decree is that the deeds constituted an absolute conveyance of the fee simple title to her and that the clause following the descriptions, not being in the clause in which the estate granted is usually defined, is repugnant, contradictory of the words of conveyance contained in the deeds and is, therefore, void. She says that G. B. Beal and his heirs had no interest in the land and consequently there could be no such thing as the title reverting to them. As to Beal and his heirs, she says there were no words of conveyance and, therefore, they are not parties to the deeds but strangers and the most that can be said for their claims is that the clauses following the descriptions indicated that the grantor intended to convey them some interest but failed to do so.

"We agree with the respondent that the deeds use the language and terminology usually employed in conveying a fee simple title and that absent the clauses following the descriptions these deeds do constitute an absolute conveyance of the fee simple title. [Citing cases.] We also agree with the respondent that the title could not "revert" to G. B. Beal and his heirs. The word "revert" to those skilled in conveyancing usually means that the instrument contains a clause so limiting the estate conveyed that there is a possibility of its terminating and reverting to the grantor; it is a reversionary interest, a defeasible fee simple estate, which could not exist here because G. B. Beal and his heirs were neither grantors nor owners and there are no words of defeasance in the deeds. [Citing authority.] Nor could there be any title or interest in G. B. Beal and his heirs by reservation or exception because the one reserves to the grantor some new interest out of the thing granted, while the other excludes from the operation of the grant some existing part of the estate, neither of which is attempted in this instance. [Citing authority.]

"We do not agree with the respondent that Beal and his heirs are not grantees in the deeds and, therefore, strangers. * * *

"It does not necessarily follow from the fact that one is not mentioned in the places or clauses of a deed in which grantees are usually named or indicated that he may not be or become a grantee. It is immaterial in what part of the conveyance the grantees' names appear as long as the parties' intention is clearly and plainly manifest as to who they are and the estate they are to receive. [Citations.] The rule as to the repugnant designation of parties is that 'All the language of a grant should be considered and effect given to it unless so repugnant or meaningless that it cannot be done, in which case the repugnant or meaningless portion may be rejected.'

"Neither do we agree with the respondents' contention that the clause following the descriptions is necessarily contradictory of the estate previously conveyed and, therefore, void for repugnancy. If repugnancy or irreconcilable conflict exists, of course, the clause in which estates are usually defined and granted would prevail over a subsequently conflicting clause. But, as the case is with the grantees so it is as to repugnancy in other respects, even if various clauses do conflict, yet if the intention of the parties may be gathered from the whole instrument, rather than from particular segregated clauses, that intention will prevail and be given effect if possible and if it is not contrary to some positive rule of law. [Citations.] 'In accordance with the modern rule, which is to ascertain the grantor's intention from all the terms of a deed in all cases where it is possible so to do and to consider all the clauses together without undue reference to their location in the deed, where two clauses are inconsistent, the paramount rule is that the deed must be construed so as to give effect to the intention of the parties as collected from the whole instrument. The primary or dominant intent expressed in the instrument, when ascertained, will control.' "

It follows that the Chancellor erred in his ruling.

The litigation is thus disposed of, *i.e.,* we reach our determination solely and entirely from the language used in the deed itself; however, it is interesting to note that Mrs. Fletcher apparently felt that she was only possessed of a life estate in the property. In the first place, wishing to construct a bungalow upon a tract in the northwest corner of the property conveyed in the deed, Mrs. Fletcher, many years ago, purchased this particular tract from the children and grandchild of J. H. Fletcher, paying to them the sum of $300 for the property. Joe Yingst, caretaker at the First Methodist Church for the past seven years, testified that the church is located right east of the Fletcher "home place," and he went to the Fletcher home once a week for five or six years before her death to wind a clock; that Mrs. Fletcher told him that the Methodist people wanted to buy a strip across her lot for a parking lot, but that "she couldn't sell it." Yingst was not acquainted with appellants, and apparently had no interest in the case. He also testified that she said, "she guessed the church was counting the days so they could buy the property from the heirs."

Mrs. Sadie Croft, 83 years of age, testified that she had known Ella Fletcher from 1914 until the time of her death; that she and Mrs. Fletcher were close friends and visited back and forth. Mrs. Croft stated that Mrs. Fletcher told her of the efforts of the Methodist church to buy the property mentioned, and "she said she couldn't sell it because it belonged to the Fletcher estate. * * * She said they kept wanting to buy it but she couldn't sell it." A few other instances appear in the record which indicate that Mrs. Fletcher considered she only held a life interest, but as heretofore stated, our conclusions are based solely upon the provisions in the deed, which we consider to be clear and unambiguous.

In accordance with the reasoning herein set forth, we are of the opinion that Mrs. Fletcher only held ab-

solute title to the tract,[4] heretofore referred to, wherein she purchased, for $300.00, the interest of the daughters and granddaughter of J. H. Fletcher. Appellees have no valid claim to the balance of the property in litigation.

The decree is reversed, and the cause remanded to the Washington Chancery Court with directions to enter a decree not inconsistent with this opinion.

[4] More particularly described as follows: "Beginning at the Northwest corner of Block Number nine (9) in the Original Town of Springdale (Old Town) as designated on the plat of said Town, now on file in the office of the Circuit Clerk of said County of Washington, State of Arkansas, and running thence east 60 feet, thence south 108 feet and 9 inches, thence west 60 feet, thence north 108 feet and 9 inches to the place of beginning."