THELMA JEAN McCUISTON *v.* DONNIE ROLLMAN

5-4376                                    420 S. W. 2d 925

Opinion delivered December 4, 1967

*Thompson & Thompson,* for appellant.

*Little & Enfield,* for appellee.

J. Fred Jones, Justice. In August 1961, Paul C. Rollman died intestate in Benton County, Arkansas, leaving as his sole surviving heirs a daughter who is the appellant here, and a son who is the appellee. The decedent's estate was probated and appellee was appointed personal representative. The listed assets in the probate proceeding consisted of cash in banks, savings bonds, an automobile, a pickup truck, livestock and farm equipment. Distribution was made under a family settlement agreement whereby cash, bonds, and the automobile were distributed to appellant, and the remainder of the designated personal property, of approximately equal appraised value, was distributed to the appellee. A farm consisting of 230 acres was not listed as an asset of the estate, and was not mentioned in the probate proceedings under the family settlement agreement.

In March 1963, approximately ten months after probation of the estate was closed, the appellant, for the recited consideration of One Dollar and other valuable consideration, executed a quitclaim deed transferring to appellee and to his heirs and assigns forever, the described farm land. This deed contained a recitation that the grantor and grantee were the sole and only surviving heirs of Paul C. Rollman. In April 1964, appellee executed, for the recited consideration of One Dollar and other good and valuable consideration, a warranty deed conveying an undivided one-half interest in the land to appellant, this deed contained a clause as follows:

"It is the *sole and only purpose* and intention of the grantors and the grantee in this deed to affect.

the title to the above described land in such manner that the grantors will not have any power to mortgage, sell, or otherwise convey said land or any part thereof without the approval and consent of the grantee.'' (Emphasis supplied).

In August 1966, appellee brought this action alleging that the warranty deed given by him to appellant conveyed no rights in the property to appellant and was without consideration and void. Appellee prayed a declaratory judgment voiding the warranty deed for indefiniteness and for lack of consideration, and prayed that the deed be removed from appellee's title as a cloud thereon.

Appellant answered with a general denial and with counterclaim for the $2,325.00 balance owed on a $2,500.00 loan she made to appellee in June 1962. The chancellor found the warranty deed void and removed it as a cloud on appellee's title, and gave appellant judgment for $2,325.00 against appellee. On her appeal to this court, appellant designated the following two points for reversal:

''1. The Chancellor erred in holding the Warranty Deed from Appellee to Appellant invalid and failing to give effect to it.

''2. The Chancellor erred in decreeing that the entire ownership of the involved property lay with Appellee and based the finding on the Quitclaim Deed from Appellant to Appellee.''

Appellant testified that she executed the quitclaim deed to appellant to keep him out of the Army and not as a part of the property settlement as contended by appellee. The appellee testified that he executed the warranty deed to appellant in order to defeat property rights his wife might have in the property in the event of an anticipated divorce. The avowed purpose of either party in the execution of the deeds finds no sympathy in equity, and neither would have been entitled to in-

voke the assistance of a court of equity in carrying out the avowed purposes in the execution of either deed.

As to the purpose of the quitclaim deed, the evidence is in conflict. This deed is valid on its face and no fraud is evident in connection with its execution. The chancellor was also the probate judge who approved the property settlement agreement, and we are unable to say that his decree that the quitclaim deed transferred good title is against the preponderance of the evidence.

In the case of *Luther* v. *Patman,* 200 Ark. 853, 141 S. W. 2d 42, this court said:

"We think a restatement of the law found in § 237, 16 American Jurisprudence, at bottom p. 570, is a correct general declaration of the law of the construction of deeds. Said § 237 is as follows:

"The modern and now widely accepted rule to determine the estate conveyed by a deed with inconsistent clauses has for its cardinal principle the proposition that if the intention of the parties is apparent from examination of the deed 'from its four corners' without regard to its technical and formal divisions, it will be given effect even though, in doing so, technical rules of construction will be violated."

The above quotation states the rule long adhered to by this court. See *Osborne* v. *Clarkson, Ex'x,* 237 Ark. 219, 372 S. W. 2d 622; *Carter Oil Co.* v. *Weil,* 209 Ark. 653, 192 S. W. 2d 215.

In applying the above principles to the case at bar, the conclusion is irresistible that the warranty deed in question is void. This deed, on its face, shows that there was no intent to convey title, but the sole and only purpose and intent was to prevent appellee from disposing of the property without appellant's consent.

The appellant contends that the deed was meant to reconvey to her an undivided one-half interest in the property and also served as a first option to purchase appellee's undivided one-half interest if, and when, he should decide to sell. Appellant's contention is totally inconsistent with the plain language of the deed. The testimony of both parties indicates that the sole purpose and intent in the execution of this deed was to do exactly what the deed purports to do, place a cloud on the title of the property described in the deed. We agree with the chancellor that the deed is void for lack of intent to convey any interest in the land and was only meant to place a cloud on appellee's title.

Appellant also contends that even if the warranty deed is void, appellee has failed to show a consideration for the quitclaim deed given by appellant to the appellee. Appellant testified that she executed the quitclaim deed in order to aid appellee in avoiding service in the armed forces and that no money changed hands in connection with the transaction. This deed recited consideration of "one dollar and other valuable consideration to us in hand paid" and the deed is good on its face. No fraud is alleged or proven in connection with the execution of the deed and since the deed was a present grant rather than a promise to be performed in the future, no consideration was necessary to the validity of the deed. (*Ferguson* v. *Haynes,* 224 Ark. 342, 273 S. W. 2d 23; *Cannon* v. *Owens,* 224 Ark. 614, 275 S. W. 2d 445.) The finding of the chancellor that the quitclaim deed is binding as against the appellant is not aganst the preponderance of the evidence.

The question was raised at the trial of this case as to whether the farm real estate was considered as part of the family settlement agreement in the course of the administration of the estate, or whether a deed to the farm was "delivered" to appellee by the deceased prior to his death. This question was rendered moot on both points by the validity of the quitclaim deed, and the in-

validity of the warranty deed. The decree of the chancellor is affirmed.

Affirmed.

HARRIS, C. J., WARD and FOGLEMAN, JJ., dissent.

PAUL WARD, Justice. For reasons hereafter set out, I cannot agree with the majority opinion relative to the portion discussed herein. The material facts will be summarized.

Appellant is a sister to appellee. On March 26, 1963 appellant, for "One Dollar and other valuable consideration" executed to her brother a *Quitclaim Deed* conveying her entire interest in 230 acres of land. The majority hold the consideration sufficient even though appellant testfied she made the conveyance to keep her brother out of the army.

On April 23, 1964 appellee executed and delivered to his sister, by *Warranty Deed, an undivided one-half interest* in the same 230 acres. The expressed considoration in both deeds were exactly the same. The majority holds this Warranty Deed to be void—giving the sister nothing.

The sole reason for the majority holding is based on a "clause" in the Warranty Deed, which clause is copied at page two of the opinion.

The majority cite and rely on three decisions of this Court for holding the Warranty Deed "void". They say, on page four, "This deed, on its face shows that there was no intent to convey title . . ." even though the deed itself contains these words signed by appellee: ". . . do hereby grant, bargain and sell" unto appellant; "We will forever warrant and defend the title . . ."

The cases referred to above and relied on by the majority are no authority to hold the Warranty Deed

absolutely void, but they, and many other cases, are authority for *construing* and *modifying* the deed. To the same effect are: *Brawley* v. *Copeland,* 106 Ark. 256, 153 S. W. 101; *Mason* v. *Jackson,* 194 Ark. 236, 106 S. W. 2d 610; *Jenkins* v. *Ellis,* 111 Ark. 220, 163 S. W. 524; *Jackson* v. *Lady,* 140 Ark. 512, 216 S. W. 505; *Coffelt* v. *Decatur School Dist. No.* 17, 212 Ark. 743, 208 S. W. 2d 1, and *Chicago Rock Island & Pacific Railroad Company* v. *Olsen et al,* 222 Ark. 828, 262 S. W. 2d 882. In the *Jenkins* case, *supra,* and the *Jackson* case, *supra,* (and in many other cases) the rule is clearly stated that deeds are most strongly construed against the *grantor* and in favor of the *grantee.*

The result reached by the majority is, in my judgment, not only judicially unsound but it is illogical and unjust. Illogical, because, if appellee didn't intent to convey anything to his sister, he must have known she could not prevent him from selling his own land. Unjust, because it lets appellee take advantage of his own selfish scheme.

It is, therefore, my opinion that the deed here in question (concededly being executed for sufficient consideration) can be, and should be, *construed*—not held to be *void.*

JOHN A. FOGLEMAN, Justice, dissenting. As I view this case, appellee Rollman invoked the jurisdiction of the chancery court for a declaratory judgment that his voluntary deed of April 23, 1964, to his sister, appellant McCuiston, is void for indefiniteness and for lack of consideration and that she has no interest in the real estate conveyed *by reason of said deed.* He also asked that the deed be removed from his title as a cloud thereon and for general relief.

Appellant filed an answer which constituted a general denial and asked that the complaint be dismissed. Subsequently, she filed an amendment to her answer in

which she admitted execution of the deed but denied that it was vague and meaningless. She further denied that the deed constituted a cloud on plaintiff's title and that there was no consideration for the deed. This pleading contained a counterclaim for money loaned. A judgment, from which no appeal has been taken, was rendered thereon. The prayer in this amendment was that the complaint be dismissed *for want of equity,* and for recovery of the money loaned with a lien upon her brother's "undivided one-half interest."

The chancellor saw and heard the witnesses and made detailed findings of facts. One of these was that the primary, if not the sole, reason for the execution of the deed was to prevent the wife of appellee from acquiring some interest or ownership in the property by reason of then impending marital difficulties between appellee and his wife. He further found that the prime, if not the only, reason for the inclusion of the phrase in question was to make it impossible for his wife, under any circumstances, to acquire some proprietary interest in this tract of land. The chancellor was warranted in finding that these facts were undisputed, or virtually so.

Under these circumstances, I do not feel that the appellee is entitled to any relief in a court of equity, even though appellant was a party to the attempted fraud. In *McClure* v. *McClure,* 220 Ark. 312, 247 S. W. 2d 466, a chancery court's decree, setting aside a deed executed for the purpose of defrauding a husband's creditors on the ground that the wife was a party to the attempted fraud, was reversed. This court said that such a grantor was not permitted to invoke the assistance of equity in setting aside the deed because he did not come into court with clean hands. This court has held that a grantor who was agreeable to perpetrating a fraud on his wife and creditors by execution of a deed was barred by the "clean hands doctrine" from claiming that the deed was intended to be a mortgage. *Marshall* v. *Marshall,* 227 Ark. 582, 300 S. W. 2d 933.

In *Fullerton* v. *Fullerton*, 233 Ark. 656, 348 S. W. 2d 689, a husband brought a suit to cancel a certain deed made by third parties to his former wife during the marriage and to quiet and confirm the title to the real estate thereby conveyed by him. The husband appealed from a decree of the chancery court holding that the land was the sole and separate property of the former wife. Mr. Fullerton contended that he had left money with his wife in order that she could make the payment of the purchase money when the deed was delivered. Mrs. Fullerton claimed that he insisted that the title be put in her name. The only reason she could suggest for this was that he had an ex-wife who he thought might sue him for some back alimony and that he probably thought some little girls, under age, that he had gone with might sue him. The chancellor found that the title was placed in Mrs. Fullerton's name as a gift from the husband, but the husband sought to overturn this finding because of her testimony that the title was placed in her to permit him to defeat the collection of some *potential* judgments. This court said that this testimony could not benefit him because a husband who conveys land to his wife in fraud of creditors is not permitted to invoke the assistance of equity in setting aside the deed since he does not come into equity with clean hands.

I do not see how this court can justify the granting of equitable relief to appellee.

Because of this view, I see no purpose in discussing the effect of the earlier quitclaim deed from appellant to appellee. I agree with the chancellor that this is not really important to the decisive issues in the case. He stated that he mentioned it only as a matter of interest because it came up in the evidence. It is notable that the quitclaim deed is not mentioned in the court's decree, although there is a finding that appellee is the owner of the land. Although I do not feel that this question is actually in issue, there is sufficient evidence

sustaining validity of the quitclaim deed that we could not say that the court's findings were against the preponderance of the evidence. I would reverse and dismiss.

I am authorized to state that Harris, C. J., joins in this dissent.